LEVI STEINWEG, Respondent, *v.* THE ERIE RAILWAY, Appellant.

A clause in a bill of lading, given to the shipper of goods by a common carrier, exempting the carrier from liability for loss of the goods from certain causes, is binding upon the shipper, as a special contract between the parties.

But where such clause releases the carrier "from damage or loss to any article from or by fire or explosion of any kind," it does not release him from liability for damage by those means, resulting from his own negligence.

It is negligence in a carrier to omit to furnish for its vehicles and machinery for the transportation of goods, any improvement known to practical men, and which has actually been put into practical use; but a failure to take every possible precaution which the highest scientific skill might suggest, or to adopt an untried machine or mode of construction, is not, of itself, negligence.

Accordingly, where goods, having been shipped upon the defendant's railway under a bill of lading containing a clause releasing it from liability "for damage or loss to any article from or by fire or explosion of any kind," were destroyed by fire kindled by sparks from the locomotive hauling them,—*Held*, that such clause did not exempt the defendant from liability for loss by fire occasioned by the omission to apply to the locomotive any apparatus known and actually in use, which would prevent the emission of sparks; but *held*, further, that the charge of the judge that, if the jury should find "that a locomotive could be so constructed as to prevent the emission of sparks, and thereby secure combustible matter from ignition, and the defendant neglected so to construct this locomotive, they should find for plaintiff, because there was a duty upon the defendant to use every precaution and adopt all contrivances known to science to protect the goods intrusted to it for transportation," was error, and not in accordance with the correct rule.

(Argued November 16th, decided November 29th, 1870.)

APPEAL from the judgment of the General Term of the New York Common Pleas, affirming a judgment in favor of the plaintiff entered upon a verdict, rendered at a trial before Mr. Justice BRADY and a jury.

The case shows the following facts: On the 28th day of September, 1865, the plaintiff's assignor shipped by the

defendant two cases of merchandise on a bill of lading that contained this provision: "And in consideration that this company has reduced the price of such transportation below its local rates, the shipper and owner does hereby release the Erie railway company  *  *  from liability  *  *  from damage or loss to any article from or by fire or explosion of any kind." On the 30th day of September, 1865, the merchandise was destroyed by fire near Callicoon station on the Erie railway, " whilst in the possession of the defendants, on one of its freight trains then in motion, and which fire caught from a spark of the engine of the train." The defendant refused to pay the loss, claiming exemption from liability under the foregoing clause in the bill of lading.

On the trial, the plaintiff proved " that there were appliances in regard to locomotives by which they consume their own smoke and sparks, and prevent their setting fire to property." The learned judge instructed the jury that, by the contract, the liability of the common carrier was limited, and the defendants " protected, providing the goods were destroyed by accident and not by negligence on their part. The contract does not absolve the defendants from liability unless the destruction of the goods was caused by accident, over which they had no control." That if " locomotives can be so constructed as to prevent the emission of sparks, and thereby secure combustible matter from ignition, and the defendants have neglected to so construct their engines and the goods of the plaintiff were destroyed by the emission of the sparks," the defendants were liable " because there is an obligation on the part of a common carrier to use every precaution, and adopt all contrivances known to science, to protect the goods intrusted to him for transportation." To this the defendant excepted, and requested the judge to charge " that the defendant was not liable unless it was guilty of fraud, or culpable negligence amounting to fraud, in causing the fire or destruction of the goods," which request the judge refused. The jury found for the plaintiff, a verdict for the value of the goods destroyed.

*S. Newell,* for the appellant, to the point that the carrier may release himself by contract from his common law liability, except in case of fraud or culpable negligence amounting to fraud, cited *Alexander* v. *Green* (7 Hill., 533); *Wells* v. *Steam Nav. Co.* (4 Seld., 375); *Wells* v. *N. Y. C. R. R. Co.* (24 N. Y., 181); *Perkins* v. *N. Y. C. R. R. Co.* (id., 196); *Bissell* v. *N. Y. Cent. R. R. Co.* (25 N. Y. R., 442); *Lee* v. *Marsh* (43 Barb., 102); *Stedman* v. *Western Transportation Company* (48 Barb., 97). He also insisted, that the charge of the judge as to the defendant's duty in the construction of locomotives, would require them to become inventors. And that it should have been qualified so as to apply only to existing improvements which are practicable and useful.

*William Henry Arnoux,* for the respondent, insisted that the defendant was bound to use all appliances that would protect the goods intrusted to it for transportation, and, to this point, cited *Bissell* v. *N. Y. C.* (25 N. Y., 445); *Hegeman* v. *Western R. R.* (13 id., 9). Although the defendant might, by special agreement, limit its responsibility, it cannot thus secure exemption from losses resulting from the negligence of itself or its servants, at least without express words. (*Grill* v. *Genl. Iron Screw Co.,* L. R., 3 C. P., 476; *Oezch* v. *Genl. Steam Nav. Co.,* L. R., 3 C. P., 14; *Lemo* v. *Dudgeon,* id., p. 17, note; *York Co.* v. *Central R. R.,* 3 Wallace, 107; *Cole* v. *Goodwin,* 19 Wend., 251; *Gould* v. *Hill,* 2 Hill, 623; *Leszinsky* v. *N. J. Central R. R.,* unreported G. T. S. C., 1st dist.; *N. J. Steam Nav. Co.* v. *Merchants' Bank,* 6 How. U. S., 382; *Schieffelin* v. *Harvey,* 6 Johns., R., 180; *Alexander* v. *Greene,* 7 Hill, 533, 547; *Dorr* v. *N. J. Steam Nav. Co.,* 11 N. Y., 485; *Wells* v. *Steam Nav. Co.,* 8 N. Y , 375; *Wells* v. *N. Y. Cent. R. R.,* 24 N. Y., 181; *Phillips* v. *Clark,* 26 L. J., C. B., 168; 2 C. B. N. S., 156; *Pen. and Orient. Steam Nav. Co.,* v. *Shand.,* 11 Jur., 771; *Lloyd* v. *Genl. Iron Screw Co.* 33 L. J., Ex., 5 H. L. C., 284; *Martin* v. *Great Indian R. L. R.,* 3 Ex.

R., 9; *Peck* v. *North Staffordshire R. R.*, 32 L. J., Q. B., 241).

FOLGER, J. The conceded facts in the case sustain the finding of the jury, that the goods in transit on the appellant's cars, while in appellant's charge, were destroyed by fire, kindled by sparks from the engine while in motion. The court below was warranted in instructing the jury that the bill of lading received from the appellant by the assignor of the respondent formed a special contract between them. The appellant remained, however, subject to all the common law liability of a common carrier, save so far as it was exempted therefrom by the effect of such special contract. (*Dorr* v. *N. J. Nav. Co.*, 1 Kern., 485; *Bissell* v. *N. Y. C. R. R.*, 25 N. Y., 445.)

And though by it the appellant was in terms released from damage or loss to the goods from or by fire, it was not relieved from liability for damage resulting by fire from its own negligence. (*York Co.* v. *Cent. R. R.*, 3 Wallace, 107–13.)

The appellant being a corporation, was obliged to act through natural persons; and their negligence is its negligence when they are its agents, so as to be identical with itself. Its board of directors or managing agents, in respect to its external relations, must be considered as so far identical with the corporation as to throw upon it the liability for their negligence. (*Perkins* v. *N. Y. C. R. R.*, 24 N. Y., 213–14.)

And as upon the directors or managing agents rested the duty of providing fitting machinery for the safe and proper working of the road, it was their negligence, and hence the appellant's negligence, if this engine used by it in hauling these goods, was, in its construction and appliances, lacking in anything which sound rules required it should have. (*Sager* v. *P. S. and P. and E. R. R, Co.*, 31 Maine, 228.)

And here arises the principal question in this case. The rule of law is, that the appellant was guilty of negligence,

if it adopted not the most approved modes of construction and machinery in known use, in the business, and the best precautions in known practical use for securing safety. If there was known and in use any apparatus which, applied to an engine, would enable it to consume its own sparks, and thus prevent the emission of them, to the consequent ignition of combustible property in the appellant's charge, it was negligent, if it did not avail itself of such apparatus. But it was not bound to use every possible prevention which the highest scientific skill might have suggested, nor to adopt an untried machine or mode of construction. (2 Redfield on Railways, 3d ed., 189, chap. 24, § 1, 176; *Ford* v. *London and South-west R. Co.*, 2 Foster and Finlayson, Nisi Prius R., 730; *Hegeman* v. *Western R. R.*, 3 Kern., 9; *Field* v. *N. Y. C. R. R.*, 32 N. Y., 339.)

And it was a question for the jury whether there did in fact such negligence exist. (32 N. Y., above cited, 346–50; 3 Kern., above cited, 26.)

The testimony on this point, as shown to us in the papers, was meagre. One witness only was called for the appellant, and he testified that it was not possible to run a locomotive without having sparks escape from it, and that there was no known method of constructing locomotives to prevent sparks escaping and setting fire to property. One witness only was called for the respondent, and he testified that there were appliances in regard to locomotives by which they consume their own smoke and sparks, and prevent their setting fire to property. But there was no testimony that such appliances were in practical use, or that the existence of them was known to practical men, nor was any evidence given that the appellants did not have upon the engine the appliances of which the respondent's witness spoke.

The court below charged the jury that the special contract did not absolve the appellant from liability, unless the destruction of the goods was caused by an accident over which the appellant had no control. This meant that though the cause of the fire which consumed the goods was accidental

(if that can be said to be accidental, the cause of which may be controlled), yet if the appellant had control over the cause, it was not relieved from liability. And this was correct; for, if it had control over the cause, and did not exercise that control, that was its negligence, and for its negligence it was liable.

The court below proceeding in the charge to the jury, called their attention particularly to the testimony of the two witnesses above alluded to, and instructed the jury that, if they should decide that a locomotive can be so constructed as to prevent the emission of sparks, and thereby secure combustible matter from ignition, and that the appellant neglected to so construct its engines, it was the duty of the jury to find for the respondent, because there was a duty on the appellant to use every precaution and adopt all contrivances known to science to protect the goods intrusted to it for transportation. This instruction does not accord with the rule above laid down.

There must exist, not only the scientific power to make locomotives which will consume their own smoke and sparks, but such locomotives must have been made by skill and put into practical use, and the use have become known, before a railway company can be charged with negligence in not putting them on to its road.

In *Ford* v. *London and So. West R'way Co.* (2 Foster & Finlayson, *Nisi prius* Rep., 730), ERLE, Ch. J., charged the jury that the company was bound to take reasonable care and to use the best precautions in known practical use for securing safety, and that it was sufficient if it used every precaution in known practical use.

In *Hegeman* v. *The Western R. R.* (3 Kernan, 9), the court charged the jury in substance that although a defect was latent, yet if it could be ascertained by a known test, the defendant was responsible. On the authority of that case, it is for the jury to decide whether the adoption of any improvement in the construction of machinery is not incumbent upon a railway company. But it is for the jury so to decide upon evidence, not alone that science has invented and constructed

it, but that it has been put in use and practically tested and become known. The charge to the jury in the court below was incorrect in this particular. It did not lay upon the jury the duty of finding from the testimony, whether there were in known practical use, at the time of the destruction of the goods, such appliances for locomotives as would enable them to consume their own smoke and sparks. From the charge, the jury were authorized to find for the respondent, if there were such contrivances known to science. It might be that scientific men, theorists, knew of them, and that the theory had taken shape in actual construction ; and still practical men have never put them into such use and so established their capabilities, as that they ought to have become known to the appellant. In the absence of such experimental use and testing, the appellant was not to be held guilty of negligence in not adopting them. The charge in this respect might have misled the jury.

The counsel for the appellant requested the court to charge the jury, that the appellant was not liable, if the goods were destroyed by fire without fraud on its part, or unless they should find it guilty of fraud or culpable negligence amounting to fraud. The court did not err in refusing so to charge. The appellant was liable, if there was negligence on its part, without regard to any supposed distinctions or degrees of negligence. But a compliance with the request would have been an instruction to the jury by the court that there are degrees of negligence,for one only of which the appellant was liable. Such instruction would have been erroneous. But, for the error above pointed out, the judgment of the General Term should be reversed and a new trial ordered, with costs to abide the event.