Church, Ch. J.
 

 Evidence was given by the defendant tending to show that the boiler was made of the best quality of iron, and in the best manner; that the steamer was properly managed in every respect, and that the bursting of the boiler was attributable to natural causes, over which the defendants had no control, and for which they were not in fault. The plaintiff gave evidence, in addition to the fact of the bursting, tending to show that the boiler was defectively constructed, in not being thoroughly braced, and some evidence, although very slight, as to whether the material used was the best for the purpose; and also evidence tending to show carelessness on the part of those in charge of the .engine and boilers at the time of the accident.
 

 The degree -of care, foresight and diligence required of the defendant in the above respects was -made a prominent question on the trial, and the learned counsel for the appellants insists that errors were committed by the judge in his instructions to the jury.
 

 There are about twenty-five specific requests to charge on that subject on the part of the defendant, several on the part of the plaintiff, as to each of which the court charged as requested, or declined to charge, or charged with a modification. There are also several exceptions to the general charge made by the court upon the same subject. Where a legal proposition is presented for prompt decision, in such a variety of forms, with slight variations of language, it would be extraordinary if expressions could not be found which, considered separately, would not be obnoxious to criticism; but an appellate court will not seize hold of isolated portions of a charge for that purpose. If the charge, as a whole, conveyed to the jury the correct rule of law, on a given question, the judgment will not be reversed, although detached sen
 
 *287
 
 teneos may be erroneous; and if the language employed is capable of different constructions, that construction will be adopted which will lead to an affirmance of the judgment, unless it fairly appears that the jury were, or at least might have been, misled. I have examined the various requests to charge, and the decisions and charge of the court, with great care, and have arrived at the conclusion that no substantial error was committed on this subject.
 

 A brief reference to a few of the later cases will exhibit the rules established by this court, and aid in elucidating the true character of the charge. In
 
 Hegeman
 
 v.
 
 The Western R. R. Co.
 
 (13 N. Y., 9), it was held that where a passenger in a railroad car was injured by the breaking of an axle, in consequence of a latent defect, not discernible by the most vigilant external examination, the company was responsible for the
 
 damages;
 
 if the defect could have been discovered in the process of manufacturing the axle, by the application of any test known to men skilled in such business, although such test may not have been used by others engaged in the same business, and that it was a question for the jury to decide whether the company was guilty of negligence in not ascertaining the utility of new improvements. In
 
 Alden
 
 v.
 
 The N. Y. C. R. R. Co.
 
 (26 N. Y., 102), it was decided that a common carrier of passengers is bound, absolutely and irrespective of negligence, to provide road worthy vehicles, and is consequently liable for injuries caused by a crack in an axle, which could not be discovered by any practicable mode of examination.
 

 In
 
 Steinweg
 
 v.
 
 The Erie R. R. Co.
 
 (43 N. Y., 123), the action was for damages in setting fire to goods by sparks from the engine. One witness testified that there were appliances in regard to locomotives by which they consume their own smoke and sparks, and thus prevented setting fire to property. And the court below charged the jury, that if locomotives could be so constructed, and the company had neglected to so construct them, it was liable, as it was bound to adopt all contrivances known to science. This court held,
 
 *288
 
 that as there was no evidence that such appliances had been put into practical use, the jury might have inferred from the charge that negligence could be lawfully imputed, if such contrivances were known to science merely without having been practically tested or generally known, but it was not intended to mitigate the measure of precautions necessary to be observed as established by the previous decisions, nor to impair their authority. By these authorities it is established that the carrier of passengers, especially in vehicles and conveyances propelled by steam, where the consequences of an accident from defective machinery are almost certainly fatal to human life, is bound to use every precaution which human skill, care, and foresight can provide, and to exercise similar care and foresight in ascertaining and adopting new improvements to secure additional protection. The learned judge charged in accordance with these principles; but it is insisted that some parts of the charge are in conflict with the opinion in
 
 Steinway
 
 v.
 
 Erie R. R. Co. (supra):
 
 The judge told the jury that they might consider, whether in the state of science, as they found in the evidence, it existed at the time of the accident, there was anything not done which human skill and foresight would have employed to discover the defect, and to remedy it, that if there were any such means which were not employed the defendant was liable; and if any such omissions occurred, it was not material, “ whether any or all the skillful manufacturers up to that time had always made such omissions; if human skill and prudence had at that time, and in the then condition of science upon this subject, disclosed anything, or any experiment which, in your judgment, would have detected any defect, if you find any to have existed, in this boiler, or which would have made it safe, and such thing or experiment was not employed. Then, whatever may have been the general habit of boiler makers, the defendant must be held liable, although you will consider what the general habit in that respect is, as bearing upon the question of what should be done, giving it such weight as you think it merits, in determining this branch
 
 *289
 
 of the case. If you find that no such defect existed, or, if it did, that science had not, up to that time, furnished any means which, if employed, the utmost human skill, foresight, prudence and care would not have enabled the defendants to detect and remedy it, then you will pass to the next point.”
 

 This comprises the most objectionable features of the charge; but, standing alone, I do not think it violates any established rule of law; at least, it is capable of a construction in harmony with prior decisions. If a defect existed, which could have been avoided or remedied, by any means which science had furnished or disclosed, the defendant should have employed such means, although not generally used.
 

 The jury would not have inferred that this related to unknown and untested inventions. The point of the charge was, that the custom of boiler makers was not conclusive upon the question of negligence in not using the best means of safety; but the defendant was bound to use such other means as science had made known and demonstrated to be useful and effective. Such is the fair import of the words
 
 disclosed and furnished;
 
 and this construction is more apparent from the direction to consider the custom of boiler makers in determining the question. Besides, the charge must be construed with reference to the evidence. Experts differed as to whether the boiler was properly braced. Several manufacturers, who were regarded as skilled in their business, were in the habit of bracing boilers as this was braced; while others used additional braces which they deemed necessary for protection. The charge, therefore, referred, not to unknown and untested practices, but to those which were, to some extent, at least, used and deemed indispensable to safety, as some of the evidence tended to establish.
 

 In the
 
 Steinweg case
 
 there was no such evidence to which the charge could have related, but simply evidence that there were such appliances; from which, we thought, the jury might have been misled into the inference that the defendant was bound to use such appliances if they existed, whether known and tested or not; while here no such result can be supposed,
 
 *290
 
 when the charge is considered with reference to the evidence. But there are other portions of the charge which clearly confirm the construction above indicated. In compliance with the eighth request of the defendant, the court charged that, if it constructed and braced the boiler “according to the most approved mode of doing the same,
 
 then known
 
 to those using the utmost care and skill in building and manufacturing boilers,” it was not liable. As to defects in the iron, the court charged, that the defendant was not liable, if it, or the manufacturers, did everything which is usually done by the most skillful boiler makers, and failed to discover the defect, or if it could hot find a satisfactory cause for the rupture, or had doubts whether human skill or foresight could have prevented the accident., Collating these affirmative instructions, it'embodies the established rule of law, and obviate the necessity of examining in detail the specific refusals to charge as requested, the principal point decided in which was, that the custom or habit of skillful boiler makers was not conclusive upon the question of the degree of care and foresight required.
 

 Another prominent allegation of error made by the learned counsel for the appellant is upon the instructions of the court in relation to the burden of proof. The affirmative of the whole issue was upon the plaintiff; audit was incumbent upon him to establish negligence to the satisfaction of the j™7-
 

 The burden of maintaining the affirmative of the issue, and, properly speaking, the burden of proof remained upon the plaintiff throughout the trial; but the burden or necessity was cast upon the defendant to relieve itself from the presumption of negligence raised by the plaintiff’s evidence. It. is necessary to consider all that was said upon this subject in order to determine whether this rule was violated. The court declined to charge that the burden was upon the plaintiff to establish that human care, skill and foresight could have avoided the accident.; and that if he failed, the plaintiff could not recover. Although this is quite general, yet, standing
 
 *291
 
 alone, there would be some force in the allegation of error. But the court immediately added, that if the jury had reasonable doubts upon that subject, the plaintiff could not recover.
 

 The onus of the whole issue was thus cast upon the plaintiff. If the case was balanced, the jury must have understood that the defendant was entitled to their verdict; and the same idea was conveyed in the instruction, that if the jury were unable to arrive at a satisfactory conclusion as to the Cause of the rupture, the plaintiff could not recover. The court also charged that “ the burden of disproving negligence is on the defendant.” But this was preceded by the remark, that “ the fact that the plaintiff was injured by the escape of steam from the boiler, raises the presumption that the defendant was negligent.” So that the jury must have understood the remark first quoted as referring to, the burden cast upon the defendant by the plaintiff’s evidence. In another part of the charge, as to negligence in the management of the boiler on the occasion of the accident, the judge said: “ The defendant must show there was not any negligence,- otherwise it failed.” But added, “ the burden of proof relieving itself of the charge of negligence, after proof of the explosion, rests properly and justly upon the defendant, because it must be presumed to have the means within its control of showing how its property was constructed and managed.”
 

 This conveyed to the jury the correct rule, that the presumption arising from the plaintiff’s proof, unless overthrown by the evidence produced by the defendant, must prevail. And still more clearly is the character of the charge manifested on this subject when the jury came into the court for instructions. They then made the following inquiry:
 
 “
 
 There is a doubt in the minds of some of the jurors with regard to the testimony of Messrs. King, Wright and Canfield, and we ask you to decide for whose benefit the doubt should be extended, according to law.” To which the court answered. “On that I repeat what I said to you, gentlemen, before. . You
 
 *292
 
 must bring to your mind the evidence; and if after doing that you have a fair and reasonable doubt, that doubt you will give to the defendant.” No other inference could be drawn from this than that the plaintiff was bound to establish his case affirmatively. Whenever one party is entitled to the benefit of the doubts arising upon a question, the other party necessarily holds the affirmative.
 

 A prisoner on trial for a crime is entitled- to the benefit of all reasonable doubts which the jury may entertain of his guilt; and this always implies that the prosecution must establish the case affirmatively to the satisfaction of the jury. The decision in the case of
 
 Lamb
 
 v.
 
 Camden and Amboy Railroad Company,
 
 recently decided by this court, is in harmony with these views. There the defendant was exempted by its contract from liability as a carrier from loss by fire; and we construed the decision of the court below, both on the trial and in the charge, to be, that it must prove, in addition to the loss by fire, that it did not occur through any contributing negligence on its part; and the jury were instructed, that, unless they found that the defendant was not negligent, the plaintiff was entitled to recover; which we held to be error, on the ground that, after proof of loss by fire, the burden of showing negligence was on the plaintiff to establish, and not on the defendant to disprove.
 

 An exception was taken to the refusal of the court to charge the jury that if the defendant had in all respects complied with the act of congress, they were not liable; and also that, in that event, there was no further presumption of neglect against them, by virtue of that act. (Brightley’s Dig., 850.) This is untenable. The act of congress provides additional safeguards for the protection of passengers on steamboats to those before imposed by law. The liability of owners is not in any manner restricted or limited by that statute, and is not therefore confined to the acts of omission or commission therein declared to be negligent. A failure to comply with its provisions would subject the party to its penalties, and .also to a charge of negligence; but it does not operate to take
 
 *293
 
 away any common-law liability or remedy, and does not profess to do so. The presumption of negligence, arising from the bursting of the boiler, did not depend upon this statute, but arose from a rule of the common-law, that where an act takes place which usually, and according to the ordinary course of things, would not happen, if proper care was exercised, it is presumed that such care was not observed. The provisions of this statute are not in conflict with the common-law ; but if they were, rules of evidence prescribed by congress are not binding upon State courts.
 

 It is also insisted that the court erred in refusing to permit Wright and Canfield to be recalled and re-examined by the defendants as to the facts sworn to by King, tending to show that Canfield was asleep in the engine room for a considerable period before the accident, and that Wright was absent and was engaged in coaling up as far down as Thirtieth street.
 

 The defendant had examined Wright and Canfield (the former being assistant engineer, in charge of the boiler, and the latter the oiler), as to the management of the engine and boilers, and to prove that they were properly discharging their duties.
 

 On cross-examination, each of these witnesses was asked if he was asleep in the corner of the engine room, and each testified that neither of them was asleep, but both stated that Canfield was sitting in the corner of the engine room, but was not asleep. Wright thought they coaled up last at Yonkers, and neither of them recollected seeing any other person in the engine room. The plaintiff then called King, who testified that he was in the engine room three times during the hour preceding the accident. The last time about ten minutes before, and that Canfield was sitting in the corner of the engine room, leaning back, with one eye shut, apparently asleep ; that Wright was in the coal room, and engaged in coaling up as far down as Thirtieth street. The defendants then recalled Canfield, and asked him if he was asleep in the engine room. This was objected to, and the objection sustained on the ground that the witness had dis
 
 *294
 
 tinetly contradicted King on that point, which was excepted to. The defendant’s counsel proposed to
 
 contradict
 
 King “ question by question,” which was excluded on the ground that King had simply contradicted him. It will be observed that the evidence was excluded, not because it was incompetent, nor for the reason that the defendant had rested. There was no question of the right of the defendant to prove the facts, nor to prove them at that stage of the trial, but the evidence was excluded solely because it would amount to a reiteration of what they had before stated. The counsel for the defendant did not offer to go beyond a simple contradiction
 
 “
 
 question .by question.” Canfield was sitting in the corner of the engine-room confessedly. As to that circumstance he and Wright and Bang concurred. Whether he had one eye shut, and appeared to be asleep, were circumstances which it was not proposed to contradict. The court assumed that the contradiction was as to the main fact of being asleep. Canfield and Wright had positively denied that, and although their evidence on this point was called out on cross-examination, we think it was discretionary with the court to allow them to be recalled or not. In general a party is entitled to examine his own witnesses upon material facts, and should not be precluded by answers made upon the examination of his adversary; but this, like many other rules relating' to the time, manner and order of receiving evidence upon the trial is a matter of discretion, and is not a cause for a reversal of the judgment, unless it can be seen that the party has been injured or prejudiced. (4 Hill, 202; 1 Hill, 300; 20 Wend., 225.) So as to the time and place of coaling up. Wright- had given his recollection, and there was no claim that he could add anything new, and none that Canfield could. The general offer to show that Wright was1 in and about his duties, presented a clear point for the exercise of discretion because both these witnesses had before been examined on that subject, and no additional facts were proposed to be shown. While we would have been quite as well satisfied under the circumstances presented, if the judge
 
 *295
 
 had permitted a re-examination of these witnesses, we cannot say that the defendant was injured, or that his refusal constitutes an error in law which will justify a reversal of the judgment. The offer to contradict King by a new witness stands upon a different footing. It was competent to disprove the circumstances stated by him, whether the evidence for that purpose is regarded as answering or rebutting evidence. From the course of the trial it was the latter. The defendants undertook to establish proper management. The facts stated by King were claimed to disprove it, and it was the right of the defendant to reply to such facts, either by impairing the credit of the witness by contradiction, or otherwise destroying their force. But the evidence was not excluded on that ground. The case is somewhat vague as to when this offer was made. But from the offer and remark of the court excluding it, we infer that it was not made until the day after the evidence was closed. The case states before this offer appears that defendant’s counsel asked for delay until this witness and another, for whom they had telegraphed, arrived from Albany, and proposed to make an affidavit, to which the court answered: “I will consider the affidavit as made, and refuse to hold the case open for that purpose.” Then follows the statement of the counsel, that the witness “ whom they referred to
 
 yesterday
 
 ” was present, and asked to put him on the stand. The court said :
 
 “
 
 I will not
 
 open the ease
 
 at present.” And then follows the charge of the court. If the testimony was closed the day before as we infer, it was discretionary with the court whether to open the case or not, to receive the additional evidence, and the decision is not reviewable here. The withdrawal and absence of witnesses who might be called in reply, or other circumstances, may have rendered the decision proper. It was not then a matter of legal right, and if injustice was done redress could only be obtained in the court below. The party alleging error must show it affirmatively.
 

 An exception was also taken to the charge, and refusal to
 
 *296
 
 charge upon the subject of exemplary damages. The plaintiff requested the court to charge the jury, that if they believed that the injury resulted from culpable negligence, they might consider that circumstance in fixing the amount of damage, to which the court assented, with an explanation to the effect that such culpable negligence must consist either of a willful act, which did not exist in this case, or the negligence must have been so great as to exhibit utter recklessness on the part of the defendant of the live or safety of the passengers, which in this case could not be, unless the jury believed from the evidence that the defendant neglected, either in the construction or management of the boiler, some act which is generally resorted to, to test its efficiency or work in safety. The defendant’s counsel requested the court to charge, that the plaintiff was not entitled to recover “smart-money, or exemplary, or vindictive damages,” which the court refused. The rule of law laid down by the court was substantially correct. Exemplary damages may be allowed not only in vindictive actions so called, such as assault and battery, false imprisonment, defamation and the like, but also in actions based upon negligence. (14 N. H. R., 9; Sherman
 
 &
 
 Red-field on Reg., § 600.) And if the jury could find in this case, that the defendant omitted, either in the construction or management of the boilers the usual and ordinary means of protection, and that such omission' caused the accident, it would evince that recklessness of the lives, and safety of the passengers, which would justify such damages. The rule of liability for actual damages is much more stringent. That rule requires the utmost care and foresight, and may arise where good faith exists, and for the consequences of defective judgment or inferior skill, or the simple and casual negligence of servants and agents. Corporations are not exempt from the infliction of punitive damages in a proper case. (S. & R. on Reg., § 600.) “ In any case where exemplary damages maybe recoverable against the servant, they should be allowed against the master, if it appears that he had reasonable
 
 *297
 
 notice of the negligent habits of the servant, or if he left the servant without control or supervision in the work.”
 

 The more difficult point is whether the facts warranted the submission of the question of exemplary damages to the jury. As a question of fact, from the evidence, I do not think it was a case for such damages. The kind of iron used for the different parts of the boiler was that which was uniformly used. There was some evidence that a certain heating process would have detected any latent defect in the iron used, but there was no evidence that any such defect existed. As to the bracing, there was a conflict of evidence. A majority of experts and skilled mechanics called, testified that this boiler was properly and sufficiently braced; others thought it was not. And although the steamer Dean Richmond was braced as the plaintiff claimed this should have been, yet it is evident that there was an honest difference of opinion among those best qualified to judge on this subject, and the defendants should not be punished in addition to their liability for actual damages, for a mistake in judgment in this respect. The evidence fails to show that the additional bracing was usual or customary, to the extent that its omission should be regarded as culpable. So of the alleged carelessness of the assistant engineer and oiler at the time of the accident; the acts and omissions claimed to constitute it were in dispute, as well as their effect in producing the rupture. It does not appear that their conduct was wanton or grossly negligent, nor were the defendants guilty of any neglect in employing or retaining them. At most, they were guilty of simple negligence only. There was evidence warranting a verdict for compensatory damages, and considering the large expenses incurred by the plaintiff, and the serious and permanent injuries received by him, the amount was not excessive, and it is probable, from the guarded charge of the court, that nothing more than actual damages were allowed or considered by the jury, but we have no legal means of determining that there were not. As
 
 to
 
 such damages, there is a wide range of discretion, which
 
 *298
 
 is rarely interfered with by the court. (Sedg. on Dam., 400.) The question is whether there is any view of the facts which the jury would have been warranted in taking, which would justify a verdict for punitive damages. If there is, although we may differ with them, the judgment should not for that reason be disturbed; but if not, the refusal to exclude the question from their consideration was error.
 

 For the reasons before stated, I think that the judge should have charged as requested, and withdrawn the question from the jury; but my associates are of opinion that there was no legal error committed on this subject, that the judge stated the facts necessary to be established to justify them in awarding exemplary damages, and that the jury could not have found such damages unless such facts existed. That in view of these instructions, the judge may have construed the request of the defendant as meaning that exemplary damages could not, upon any state of facts, be recovered in the action, and that the precise point that the facts would not warrant such damages, does not appear to have been distinctly presented in the exceptions, and if this was not so, that the jury might have given the evidence such a construction as to warrant such damages.
 

 The counsel for the defendant excepted to a remark of the judge, when the jury came into court for instructions, to the effect that he thought there was not much difficulty in arriving at a conclusion, and that if they did not agree he should feel it to be his duty to keep them together until Monday. It will be observed that the judge expressed no opinion on the merits, and gave no intimation of what his opinion was, but only that he thought it was not a difficult case to decide. He may have entertained an opinion either way or none at all. It was entirely proper to urge an agreement of the jury to a rear sonable extent, and the remark that he thought the case not difficult, was neither error nor improper. As to the other portion of the remark, it is said that it was Thursday when the jury came in, and that the threat to keep them until Monday operated to cause a verdict improperly; but we think that this
 
 *299
 
 question is not reviewable on a bill of exceptions. It relates to the treatment of the jury, and not to any question of law or fact in the case. There are many questions of that character which are matters of discretion, such as whether the jurors shall be allowed to separate, whether they shall be furnished refreshments, whether they may bring in a sealed verdict, and the length of time they shall be kept together for the purpose of an agreement, and for any abuse in the exercise of this discretion, redress is to be obtained not by a review upon a bill of exceptions, hut by a motion to set aside the verdict as for misconduct of the jury. Such was the mode pursued in the case cited 11 How. Pr. R., 260. It is unnecessary, therefore, to express any opinion upon the propriety of the remark excepted to. The judgment must be affirmed.
 

 All concur.
 

 Judginent affirmed.