Grover, J.
 

 In March, 1866, the defendant was a corporation under the laws of Canada, and engaged in the transportation of persons and property by rail, between Goderich and
 
 *528
 
 Buffalo. On the fifteenth of that month, the defendant received from the plaintiffs, at Goderich, a quantity of cattle, which it agreed with them to transport and deliver to them at Buffalo, in consideration of the payment of the usual freight, under the following stipulations, regulating its liability: 1st. That the owners of the cattle undertake all risks of loss, injury, damage and other contingencies in loading, unloading, conveyance and otherwise. 2d. The company do not undertake to forward the animals by any particular train, or at any specified hour; neither are they responsible for the delivery of the animals, within any certain time, or for any particular market. 3d. When free passes are given to persons in charge of animals, it is only on the express condition that the railway company are not responsible for any negligence, default, misconduct, or otherwise, .on the part of the company or their servants, or of any other person whomsoever causing or tending to cause the death, injury or detention of persons with such free passes; and that, whether such passes are used in traveling by any regular passenger train, or by any other train.” A portion of the cattle were loaded upon the defendant’s ears at Goderich on the same day and transported to Brantford, where the car containing them was detached from the train and placed upon a side track, where it remained for three days, and the residue loaded and taken to Brantford upon the sixteenth of the same month; and the car containing them also detached and placed upon the same track, where it remained for two days. The case further shows that the weather was very cold during this interval. That the cattle could not be unloaded from the cars where they were, nor fed or watered while therein. That from exposure to the weather while there, and the want of food and water, some of the cattle died, and the others were seriously injured. It further appeared that the usual time of transporting cattle from Goderich to Buffalo was from eighteen to twenty hours. By the contract the defendant undertook to transport the cattle in the usual way and in the usual time, and deliver them safely at Buffalo; and in default of
 
 *529
 
 performance became liable to the plaintiffs for the damages thereby sustained, unless exempt therefrom by the stipulations of the contract, or some other legal excuse for its failure to perform its contract. The first stipulation restricting the common-law liability of the defendant has no application to the case, as the injury to the cattle did not occur while loading, unloading "or carrying them under the contract. The concluding words of this stipulation, “ and otherwise,” if they have any meaning, clearly have no application to the present case, as it cannot be claimed that either party thereby understood that it was intended to shield the defendant from liability for running the cattle on to a side track, and unnecessarily abandoning them there to perish by cold and famine. The second clause merely exempts the defendant from liability for failing to forward the cattle by any particular train or at any specified hour, or for a failure to deliver within any certain time or for any particular market. This obviously was designed only to shield the company from liability for its failure to load and place the animals upon any particular train, or if so loaded and placed, for failing to start such train at the particular time advertised or at any particular hour, and for failing to deliver within any certain time or in season for any particular market, but not to protect it from liability for an entire failure to perform its contract, or for any substantial breach after entering upon its ■ performance. The third stipulation relates entirely to the liability of the company for injuries to the persons in charge of the cattle riding upon free passes, and lias nothing to do with the present case. Leaving the cattle upon the side track at Brantford for the length of time they were left, and under the circumstances of exposure to injury, can. in no sense be regarded as an act of negligence in the execution of the contract. It was for the time an entire abandonment of all effort to perform, intentional on. the. part of the employes of the company; and if such effort had not thereafter been resumed and all the cattle had perished while in the cars upon the side track, no one would,.I. think,.have pre
 
 *530
 
 tended that the company was excused from liability for their loss, for the reason that the company was, under the contract, exempt from liability for injuries caused by the negligence of its servants in its execution. It is immaterial, therefore, to inquire whether, by the true construction of the contract, the company was so exempt or not; or, if not so exempt by the common-law (see
 
 Steinweg
 
 v.
 
 Erie Railway,
 
 43 N. Y., 123), such an exemption under the law of Canada was shown by the testimony of the learned barrister, introduced by the defendant upon the trial. The judge did not err in denying the request of the defendant’s counsel to direct the jury to find a verdict for the defendant. By the law of Hew York and of Canada, the defendant was liable for the injury in question, unless excused therefrom hy such an unusual and unexpected accumulation of freight between Brantford and Buffalo, which the defendant was required by law to transport prior to the receipt of the cattle in question, as rendered delay in transporting the latter absolutely necessary. The evidence was far from proving this. Taking the most favorable view of the testimony bearing upon this fact, the most that the defendant could claim was that the question should be submitted to the jury. An examination of the charge shows that it was submitted to the jury, more favorable to the defendant than the law authorized. The court charged the jury, in substance, that the contract required the defendant to transport the cattle .according to the usual course of business, and that there .should be no affirmative discrimination against this species of freight. That it was the duty of the defendant to forward freight in the order in which it was received. That the ¡defendant had no right to give preference to freight about to become dutiable over that in question, and if it did so was liable. So far the charge was correct. The court then erroneously charged the jury that, if such preference was given, and the consequent delay had resulted from the misconduct or negligence of what was ordinarily known as the employes •of .the defendant, it would not be liable; but that the
 
 *531
 
 defendant was liable for its own negligence or misconduct, or of that of the witness Barnard. The latter portion of the charge was correct, except so far as placing the cattle and leaving them on the side track, is called negligence. We have already seen that this was a deliberate, intentional act, constituting a breach of the contract, and in no sense negligence in its performance. Barnard was the superintendent of that portion of the defendant’s road, and had the entire supervision of its business and control of its servants there. He sent a telegram to Brantford to detain all stock there, and forward other freight which would become subject to duty upon the expiration of the reciprocity treaty, which would occur the next Saturday night. The effect of the charge was, that if the jury believed that an illegal preference had been given to other freight, by means of which the cattle were detained at Brantford, and that this preference and consequent delay was caused solely by these orders of Barnard, they should find for the plaintiffs, otherwise for the defendant. Under this charge the jury must have found that the detention was caused by giving an illegal preference to other freight, and in addition thereto, that such preference was caused by the orders of Barnard. The latter was an immaterial question. The accumulation of freight creating the obstacles testified to by defendant’s witnesses, was principally at Fort Erie. The difficulty was in crossing the river from that point to Buffalo. Ho reason was shown for not continuing the cars containing the cattle in the respective trains to Fort Fríe. The case further shows that defendant had a track running to a ferry at Black Rock, at which the cattle might have been crossed and saved. This might have been a little more expensive, but it was the duty of the defendant under the contract to have resorted to this, rather than let the cattle perish on the side track at Brantford. The judgment appealed from must be affirmed with costs.
 

 All concur.
 

 Judgment affirmed.