JOSEPH LOWERY, by Henry Eder, his Guardian *ad litem*, Respondent, *against* THE MANHATTAN RAILWAY COMPANY, Appellant.

(Decided May 22d, 1884.)

Where, through negligence on the part of an elevated railway company, live coals are dropped from one of its engines upon a horse, whereby he becomes unmanageable and runs away and injures a person by running over him, the company is liable for the injuries so caused, as the natural and usual consequences of such negligent act.

An elevated railway company is bound to use the most approved means that science and skill have invented to prevent fire falling from its engines into the streets below its tracks ; its duty is not limited to the use of such appliances as are in general use for that purpose.

APPEAL from a judgment of this court entered upon the verdict of a jury, and from an order denying a motion for a new trial.

The facts are stated in the opinion.

*R. E. Deyo*, for appellant.

*O. E. Bright*, for respondent.

VAN HOESEN, J.—If the negligence of the defendant caused the injury, it is no defense that it did not intend to do it. The defendant is liable for the consequences that are known by common experience to be the usual sequel of its negligent act. Every man knows that to throw live coals upon a horse will terrify him, and cause him to run. If the horse, so terrified, runs away and causes injury, the person that drops the coals upon him, either intentionally or negligently, is liable. In *Gibbons* v. *Pepper* (1 Lord Raym. 38) it was held that, " if I ride upon a horse, and J. S. whips the horse so that he runs away with me, and runs over any other person, he who whipped the horse is guilty of assault and battery, and not I." To the same

effect is the well known case of *Vandenburgh* v. *Truax* (4 Denio 464). Addison on Torts, at page 7, thus states the law: " Whoever does an illegal or a wrongful act is answerable for all the consequences that ensue in the ordinary and natural course of events, though those consequences be immediately and directly brought about by the intervening agency of others, provided the intervening agents were set in motion by the primary wrong doer, or provided their acts, causing the damage, were the necessary or the legal and natural consequences of the original wrongful act." There can be no doubt that the defendant is answerable to the plaintiff for the damage that the latter sustained, if the horse that ran away and did the injury became unmanageable through the negligent act of the defendant in dropping fire upon his back.

The first question in the case was whether the defendant did drop live coals on the horse, and that question the jury answered in the affirmative. The second question was, Was the dropping of those coals a negligent act?

It is said that the learned judge erred in instructing the jury as to what the duty of the defendant was, and, consequently, that he misadvised them as to what acts would constitute a breach of duty; for negligence is a failure to perform a duty. The judge said, " The defendant is bound to use the most approved means that science and skill have invented to prevent fire from falling into the streets below its tracks." He afterwards said, " I have been requested to charge you that the defendants are bound to use the most approved means and appliances known, in order to avoid accidents of this description." He then places his own construction upon the plaintiff's request, and says that it means " that the defendant has no right to run the risk of dropping coals on passers in the streets when it can be prevented by proper appliances;" and adds, " It is said that there are appliances by which to prevent the result that happened, and that the jury must infer from the occurrence of the accident that there was negligence on the part of the employés of the defendant. If you find that the

ashes were dropped, and that that could not have occurred if proper care had been exercised by the employés of the defendant; if you find it was the result of the negligence of the employés, the defendant's negligence would be established." At folio 372 the learned judge again states the question for the jury: Was it due to the negligence of the company in not having a proper appliance, or, having the proper appliance, in not having properly used it, so as to prevent the coals from falling down?

The counsel for the defendant seems to have misunderstood the charge, for at its close he proceeded to take exceptions to some imaginary instructions, for which the judge was no wise responsible. Again, at folio 382, the learned counsel for the defendant said, "I also except to so much of the charge as states that if the jury are satisfied that the accident was caused by burning coals, that then the plaintiff is entitled to recover." To this the judge said, "I have not so charged, but still you may take the exception in that form, from the fact that the jury may infer negligence from the dropping of hot coals in connection with the other evidence (particulars) in the case."

The plaintiff had conceded the law to be that the defendant was only bound to employ the most *approved* means that science and skill have invented. What was meant by this language? This and nothing more: that the defendant was bound to use that machinery which was found by use and experience to be the best of its kind. The word *approve* means to test. It is used to express commendation of a thing that has been examined. So Judge THOMPSON, in his work on Negligence, p. 155, interprets it, for he says, "A private person or a railroad company is not bound to purchase a patent for every invention that is said to be an improvement. *To be approved*, such appliances must be shown by use and experience to be superior and effectual. But if a safeguard has been tested, and found to meet the purpose, the railroad is bound to adopt the better machinery."

The charge of the judge differed entirely from the charge of Judge BRADY in the case of *Steinweg* v. *Erie R. Co.*

(43 N. Y. 123), which was considered by the Court of Appeals to be erroneous. Judge BRADY, in the *Steinweg* case, told the jury that the company was compelled to use every precaution, and adopt every contrivance known to science. The Court of Appeals held that this was going too far, and that it was not negligent for the railroad company to defer the use of an invention until it had been put into practical use, and until the fact that it was really superior to the contrivance upon which it was said to be an improvement had become known to those engaged in the business of operating railways. This is the fair import of Judge VAN BRUNT's charge in this case (47 N. Y. 282, 289).

The plaintiff proved that the defendant had placed under its engines a firepan that would prevent fire from falling unless the pan itself became warped, or unless it was carelessly managed by the employés. It might be allowed to get too full, or the dumping-door might be opened by the engineer to increase the draught, or the air-brakes might be applied with great power; and when any of these things occurred, ashes were likely to fall. It was proved that if the pan were in good condition, and was properly used, the descent of ashes would be entirely prevented. It was also proved that no other or better means of securing the fire had been invented, and it was argued by the plaintiff that the fact that the ashes fell, notwithstanding the efficiency of the firepan when it was in perfect order, was evidence either that the firepan was out of order, or else that it was negligently used by the servants of the company.

The plaintiff did not claim too much, when he asked the court to charge that the defendant was bound to use the most *approved* means that science and skill had invented, nor do I find that the judge went beyond the requests of the plaintiff in giving his instructions to the jury.

It would have been error for the judge to charge that the defendant was not bound to use any appliances except such as were in general use. Such a rule would effectually dispense with the adoption of any improvement, no matter

how thoroughly its advantages were demonstrated by practical use.

There are several exceptions to the rulings of the judge with respect to the admission of testimony, but no one of them is tenable. I do not think they require special notice.

The judgment and the order appealed from should be affirmed, with costs.

J. F. DALY, J.,'concurred.

Judgment and order affirmed, with costs.*

_____

* The judgment entered upon this decision was affirmed upon appeal to the Court of Appeals, May 5th, 1885 (see 99 N. Y. 150.)