## DUMES v. SIZER.

(Supreme Court. Appellate Division, Fourth Department. March 14, 1896.)

MASTER AND SERVANT—NEGLIGENCE—EVIDENCE.

It appeared that plaintiff, while in the employ of defendant, worked at a steam forge; that, while assisting in putting a new die in the steam hammer, the ram dropped, and mashed his hand; that there was some loss of power resulting from the wearing of the side block, which afforded more play to the slide than it had when the machine was new; that defendant knew this, and had remarked that he would nave to put in a new block soon. Experts testified that the wearing away of the different parts occasioned a loss of motion, and expressed an opinion that, if the ram had been hung and properly secured, the jarring of the other hammers in the building would move the valve, and let it drop. *Held*, that the question of defendant's negligence should have been submitted to the jury.

Action by Philip Dumes against William S. Sizer for personal injuries. Motion by plaintiff for a new trial on exceptions, ordered to be heard by this court, in the first instance, on the granting of defendant's motion for a nonsuit. Granted.

Upon the 24th day of January, 1894, the plaintiff, while in the service of the defendant at his steam forge, in the city of Buffalo, met with an accident in consequence of which the larger portion of his right hand was crushed to such an extent that amputation of the injured part was rendered necessary, and this action is brought to recover damages for such injury. The plaintiff, who was 35 years of age, had been in the defendant's employ about 18 months, at the time of the accident, and his principal occupation was that of a "beater." The defendant had in operation, in his business, six hammers, of great force and weight, which were worked by steam power, and each of which was managed by a separate gang of men. Upon the forenoon of the day in question, the plaintiff, who, it seems, was a member of gang No. 1, was called upon to assist in taking out the upper die of his hammer, in order that it might be replaced with another. The die to be thus replaced weighed about 600 pounds and had to be lifted from an iron buggy onto the lower die. Before this was done, the iron ram was raised about two feet from the die by the working of a lever, and was retained in this position by means of a set screw, and, while thus suspended, the work of changing the die proceeded. In order to adjust the new die to the ram, it was turned around, and then the plaintiff attempted to insert, in its proper place, an iron toggle, which was designed to fasten the upper die to the ram. While this attempt was being made, it was discovered that the die was not in a proper position to connect with the ram, and the hammersman thereupon endeavored to sledge it into position, and in doing so jarred the toggle so that it fell down upon the plate. The plaintiff started to pick it up, but, finding it hot, he took off his hat, made a holder of it, and then picked up the toggle; and, while attempting to replace it, the ram fell, and crushed his hand in the manner stated. During the entire time occupied in changing the dies, one McDougall, the defendant's superintendent, was standing by, apparently directing or overseeing the work. Such additional facts as are deemed material will be stated in connection with what follows.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

C. S. Crosser, for appellant.

Adolph Rebadow, for respondent.

ADAMS, J. In moving for a nonsuit at the close of the plaintiff's evidence, the defendant's counsel insisted, as he does now,

that there was a total failure upon the part of the plaintiff to prove the absence of contributory negligence, and that this, of itself, afforded sufficient reason for granting the motion. It is apparent, however, that this contention very properly received little or no consideration from the trial court; for it seems quite clear that the question of the plaintiff's own negligence was one for the jury to consider, whatever view may be taken respecting the real ground upon which the decision of the motion was made to rest. In reviewing this decision, therefore, the controversy is confined to the single inquiry of whether or not, upon the undisputed facts furnished by the record, it can fairly be said that the case is so barren of any evidence of negligence upon the part of the defendant as to justify the court in withholding that question from the consideration of the jury.

In entering upon a brief consideration of these facts, it will be well, perhaps, to bear in mind certain principles of law, which may be regarded as fundamental in this as well as in all similar cases. The relation of master and servant existed between these parties, and this relationship imposed upon the defendant the duty of exercising a proper degree of care, in order that the plaintiff should be furnished a reasonably safe place in which, and reasonably safe machinery with which, to render the service required of him; and, unless the evidence is such that a jury might properly draw therefrom the inference that the defendant had, in one or the other of these particulars, been remiss in the duty which he owed to the plaintiff, the latter can, of course, have no standing in court. And in this connection it may also be advisable to advert to another well-settled rule which is applicable to this case, and that is that where two or more causes operate to produce the injury complained of, for one or more of which the defendant was not responsible, the plaintiff must establish, by affirmative proof, that his injury was wholly or partially the result of a cause for which the defendant was responsible. Searles v. Railway Co., 101 N. Y. 661, 5 N. E. 66; Grant v. Canal Co., 133 N. Y. 657, 31 N. E. 220.

Now, it may be safely assumed that the accident which deprived the plaintiff of the use of his hand was either an unavoidable one, or else it was caused by a defect in the appliances and machinery furnished by the defendant, or by some negligent act of a coemployé; and to ascertain to which of these three causes it is justly attributable, is the first duty imposed by this review. The only person occupying the relation of a coemployé, whose opportunity or occupation can by any possibility furnish an adequate explanation of the accident, is the young man, Reeves, who adjusted the lever in such manner as to raise the ram above the die, and keep it suspended in that position. It appears that his duty required him to occupy a position near the lever at the time of the accident, and that, if he had moved the motion lever ever so slightly, the effect would have been to shut off the steam, and allow the ram to fall; but he swears in the most positive manner that he did not touch the lever, and there is no evidence, other than the falling of the ram, which tends in any way to contradict him, and therefore it was very

properly conceded upon the argument that, for the purpose of this review, it must be assumed that he told the truth. This being so, the theory that the plaintiff's injury was in any sense the result of negligence upon the part of a coemployé is pretty effectually eliminated from the case; and in like manner the evidence of the plaintiff's witnesses would seem to exclude the idea that the dropping of the ram was the result of an unavoidable accident, for the witness Reeves testifies that he raised it in the usual manner, and that, when it stopped, he fastened the set screw so that the lever could not be moved, and that, after the accident, he raised the ram, in order that the plaintiff's hat might be removed, and that he then "found the set screw screwed tight." This evidence is supplemented by that of the witnesses Herschler and Hire, two expert machinists,—the former having been in the defendant's employ for 11 years,—who testify that, if the machine had been in proper condition, the valve would not have moved with the lever set, and that, if the valve could not move, the ram could not come down. This process of exclusion, therefore, fairly justifies the inference that the dropping of this ram was attributable to the second of the three causes mentioned,—in fine, to some defective condition of the machinery itself; and this inference finds additional support in the facts testified to by the various witnesses who were called by the plaintiff.

The witness Sullivan, who was at work for the defendant at the time of the accident, tells us that he saw this hammer when it was new and in good condition, and that it then worked constantly and evenly, but that, at the time of the accident, it leaked steam and made a squeaking noise when he raised it, so that it could be heard all over the shop; that the ram would occasionally stick at the bottom and also at the top of the machine, so that steam pressure would not move it, and it had to be started by a blow from a sledge hammer; that this condition of things existed for two or three months prior to the accident; and that he saw McDougall, the superintendent, present at different times when the hammer was not working properly. The witness Robinson testified that he heard the peculiar noise that Sullivan speaks of, and saw the ram stick; that, when it was started by a blow, it would fly up suddenly; and that he also discovered there was a little lost motion to the hammer. Several of the witnesses say that the space in the side block had been considerably worn by constant use, and that this afforded more play to the slide than was the case when the hammer was first set up, which was some three years prior to the accident. And it is likewise made to appear that this fact was brought to the superintendent's notice; that he directed the men to keep the side block well oiled, and remarked that he would have to put in a new one soon; and that, upon one occasion, in December, 1893, when asked if that was not a good time to repair this hammer, he replied, in substance, that he was going out in the oil country to look up work, and that, as they were going to move the hammer soon, it was not worth while to make any repairs at that time. The witness Reeves also testified that, within 10 minutes after the accident, the ram

kept bouncing up and down, and he could not keep it still. With these and other similar facts, which it is unnecessary to particularize, upon which to establish a hypothesis, two expert witnesses, whose experience appears to have qualified them to speak upon the subject, expressed the opinion that, if the ram had been hung up and secured in its position, as described by the witness Reeves, the jarring occasioned by the other hammers in the building would move the valve and let it drop; or, in other words, that the wearing away of the different parts occasioned a loss of motion, and this loss of motion permitted the ram to fall, although steam was on and the levers fastened.

It is insisted, however, that, giving to these various facts all that can possibly be claimed for them, the precise cause of the accident still remains unexplained, and that the only effect of sending the case to the jury would have been to permit them to render a verdict with no more substantial foundation upon which to rest it than the merest conjecture; but this, we think, is a conclusion which the circumstances of the case will hardly warrant. And, in saying this, it may be conceded that there is an element of uncertainty in these circumstances which would quite possibly deprive any conclusion reached by finite minds of that absolute verity which the verdict of a jury is supposed to represent; but, nevertheless, we have here presented certain effects, and, with certain causes therefor excluded from our consideration, and all the material facts pointing in one direction, it does not become altogether a mere matter of speculation to determine of what such effects are the probable resultant. At all events, this case, with its attendant circumstances, can very properly be classified as one of those in which the presumption of negligence arises from the fact that the accident would not, in the ordinary course of affairs, have happened, but for the omission of reasonable care upon the part of the person charged with its exercise; and, consequently, in the absence of any explanation by the defendant, it is one in which the jury would have been warranted in reaching the conclusion that the defendant had been negligent, in that he had failed in his duty to furnish the plaintiff with machinery and appliances which were reasonably safe, and that the latter's injury was wholly or partially the result of such failure. Breen v. Railroad Co., 109 N. Y. 297, 16 N. E. 60; Mullen v. St. John, 57 N. Y. 567; Caldwell v. Steamboat Co., 47 N. Y. 282; Lyons v. Rosenthal, 11 Hun, 46; Hillis v. Hine, 11 N. Y. St. Rep. 656; Moran v. Wagon Co. (Sup.) 26 N. Y. Supp. 852. We therefore conclude that it was error to withdraw the case from the consideration of the jury, and that, because of such error, a new trial should be granted.

Motion for a new trial granted, with costs to abide the event. All concur.