FREEMAN D. MARCKWALD, PLAINTIFF, *v.* THE OCEANIC STEAM NAVIGATION COMPANY, DEFENDANT.

*Removal of cause to U. S. court — waiver of right to insist upon — Neglegence — deviation of vessel from its course — when it constitutes.*

The defendant applied to remove this action into the United States Court, and the motion was denied. No application was made to the United States Court to restrain the State courts from proceeding, nor was any reference to the application made at the trial at which defendant appeared by counsel and contested plaintiff's claim. Upon appeal it was insisted that the State court had no jurisdiction, as the cause had been removed into the United States Court.

*Held,* that, under the circumstances, this court would not examine the question, whether the petition and accompanying papers did of themselves remove the cause; that the defendant, by acquiescing in the decision and proceeding with the trial, had waived his right to insist upon it.

Upon the trial of this action, brought by the plaintiff to recover damages for injuries sustained by him through the wrecking of one of defendant's vessels, in which the plaintiff had taken passage from Liverpool to New York, it appeared that the vessel deviated from the direct course for the purpose of entering Halifax, and that the vessel was thereafter wrecked on the coast of Nova Scotia, an unusual and unlikely event in a direct course from Liver-

pool to New York. The court charged that from the fact that the vessel deviated from its course, thereby subjecting the plaintiff to perils of the sea not in contemplation when the agreement was made, by one of which he was injured, a presumption of negligence on the part of the defendant arose and cast upon it the burden of explanation. Upon appeal from the judgment, *held*, that this charge was correct.

MOTION by defendant for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict in favor of the plaintiff.

This action was brought to recover damages suffered by the plaintiff in the month of March, 1873, through the shipwreck of the steamer Atlantic off the coast of Nova Scotia. The plaintiff was a passenger from Liverpool to New York on board of the Atlantic at the time of the shipwreck, and the steamer was owned by the defendant. The vessel, it appeared, departed from the usual course from Liverpool to New York for the purpose of putting into Halifax, and the plaintiff claimed this subjected him to perils of the sea not in contemplation when the agreement for carriage was made.

Among other defenses the defendant alleged that, subsequent to the shipwreck and after the commencement of this action, the defendant filed a libel in the office of the clerk of the United States District Court for the purpose of relief, under an act of Congress passed March 3, 1851. That after the commencement of this action an effort was made in this court, by the defendant, to remove' the action into the United States Circuit Court, and the motion in that behalf was denied, with costs.

*William A. Coursen*, for the plaintiff.

*Everett P. Wheeler*, for the defendant.

BRADY, J. :

This action was brought to recover damages suffered by the plaintiff in the month of March, 1873, in consequence of the shipwreck of the steamer Atlantic, off the coast of Nova Scotia, and which was the result of negligence. The defendants did not deny the ownership of the steamer, and that the plaintiff was a passenger was admitted.

The main defense was to the effect, that subsequent to the ship-wreck and after the commencement of this action, the defendant filed a libel in the office of the clerk of the United States District Court for the purpose of relief, under an act of congress passed March 3, 1851. The answer and the supplemental answer show clearly the grounds of the defense sought to be made available in this action.

After the commencement of this action an effort was made in this court by the defendant, to remove the action into the United States Circuit Court, and the motion in that behalf was denied with costs.

Nothwithstanding the denial of the motion in this court, for the removal of this action into the United States Circuit Court, the defendant continued their efforts for relief under the said act of congress, and thereupon there was commenced by the defendant proceedings under the above-mentioned libel.

The plaintiff so far answered the said libel, that a motion on his part was made before the Honorable Samuel Blatchford, district judge, which motion resulted in an order of the 23d day of December, 1873, whereby the order under the said libel was vacated so far as it in any way affected the plaintiff. It further appears by the case, that the defendant apparently disregarded the said order of the judge presiding at the court where the libel proceedings were instituted, and on the 29th day of December, 1873, obtained an order for a monition directing parties interested to make proof of their respective claims, in the appraised value of the amount of the interest of the defendant in the shipwrecked steamer, before the clerk of the United States District Court, etc.; and the said order and monition coming to the knowledge of the plaintiff, he took such notice thereof, that there was obtained from the presiding judge of the United States District Court, an order to the effect, that the said order of December 29, 1873, and the monition founded thereon, were, so far as the same or either of them affected the plaintiff, vacated, set aside and made null and void.

Various motions were made and exceptions taken at the trial by the defendant, but it resulted in a verdict for the plaintiff, and a direction of the court that the exceptions taken by the defendant should be heard in the first instance at the General Term of this court.

The questions which the defendant's counsel supposed to be presented by this appeal have been carefully and elaborately examined, and the result stated in the brief submitted fully and ably. The counsel for the respondent indicates similar preparation, although all of the questions have not apparently engaged his attention. This may have been because of his confidence in the conclusion, that there was but one question really, and that the investigation of it must be favorable to his case. The discussion of the effect of a libel filed under the act of congress passed March 13, 1851, was extended upon the argument and is upon the briefs, but we are relieved from the consideration of that question, because the District Court in which the proceedings were conducted, on applications for that purpose, and after hearing the respective parties hereto, directed that the order made upon presentation of the defendant's petition under the act mentioned, be vacated, so far as it in any way restrained, enjoined or restricted the plaintiff herein from the prosecution of this action, and so far as the said order in any way affected or concerned the plaintiff herein; and further, that the monition of January 2, 1874 and the order of 29th December, 1873, issued and made in said proceedings, so far as the same or either of them affected the plaintiff herein *in any way*, should be vacated, set aside and made null and void. The effect of these orders was to strike out the plaintiff herein as a party, and his claim was, therefore, not considered. It does not appear, from the case, why this was done. It is not, perhaps, material on this appeal. It is enough that, in the proceedings under the act of 1851, to limit the liability of the defendant to the value of the vessel and her freight, then pending, the plaintiff herein was not included. He was by distinct order excluded, and the preliminary and necessary formalities as to him were vacated, set aside and declared null and void. The provisions of the act of 1851 (*supra*) are not, by mere force of their existence, a limit of the owner's liability. It is necessary that he shall, by proper proceeding under its provisions, yield or surrender the vessel and freight to the payment of losses when adjusted as he solicits. (*Norwich Co.* v. *Wright,* 13 Wallace, 104.)

This conclusion disposes of all questions springing out of the contemplated application or use of the decree in the libel procedure against the plaintiff's demand, and makes it unnecessary, therefore,

to determine, whether, assuming it to have been regular, and to embrace the plaintiff's claim, the defendant, as a common carrier, having its home office in another country, and being a foreign ship-owner, is entitled to the benefit of the provisions of the act of 1851. (*Supra.*) The defendant also urged, upon the appeal, as fatal to the jurisdiction of this court, that a petition had been presented under the act of congress of July 27, 1868, for a removal of this action to the United States Circuit Court, the prayer of which was denied. It does not appear from the case that this incident was referred to on the trial or then made use of in any mode. It does not appear, either, that any application was made by the defendant, in the federal court, to arrest the further progress of this case, which is suggested as the proper practice in *Bell* v. *Dix* (49 N. Y., 232), if the State court, notwithstanding the proceedings to remove, still claim jurisdiction. The defendant proceeded to trial in the usual way; not only cross-examining the plaintiff's witnesses, but examining witnesses on its own behalf, and in all respects acting as a contestant, according to the practice in actions at law.

Under such circumstances we do not feel called upon to examine the question whether the petition to remove, and accompanying papers, accomplished that object as a matter of right. The defendant has waived all right to consideration by submission to the order denying the application, and to the jurisdiction at the trial. The point thus considered will not, therefore, avail the defendant on this appeal. We have examined the exceptions, and find one only which requires particular mention. The others are not well taken, and cannot be sustained. The exception alluded to relates to the doctrine of negligence, applicable to this case, as expressed by the learned justice presiding at the trial.

He held, that inasmuch as the vessel had changed her course from Liverpool to New York, for the purpose of putting into Halifax, and thus subjecting the plaintiff to the perils of the sea, not in contemplation when the agreement for carriage was made, and inasmuch as the vessel was stranded on the coast of Nova Scotia, which was an unusual circumstance and out of the course of ordinary events, on a passage from Liverpool direct to New York, the presumption of negligence arose, and cast the burden of explanation upon the defendant.

This view of the law was predicated of the case of *Caldwell* v. *New Jersey Steamboat Company* (47 N. Y., 291), which sustains it.

The defendant attempted no explanation. It was sought to be shown that steamers sometimes went to Halifax for coal, but under what circumstances was not established. It was proved inferentially, also, that the captain in charge of the defendant's vessel, was apprehensive that the coal he had was insufficient for the voyage, and changed his course for Halifax to get it, but such evidence is not reliable. If it were, it does not show him to be familiar with the coast of Nova Scotia; and we perceive from the case, when the vessel struck, he was in the cabin examining the chart, doubtless, in decided uncertainty where he was or where he was likely to be.

There is sufficient evidence in the case to show that the course he adopted to Halifax was dangerous. Indeed, it is well known that the coast of Nova Scotia is dangerous to the navigator, and although circumstances may render its perils less than keeping on at sea, when a port must be made, nevertheless it should be approached with great care, and navigated with great diligence, watchfulness and skill.

The learned justice gave the defendant the benefit of any exigency or emergency that would render such a deviation necessary. He said on that subject:

" Of course, if any exigency of the voyage made it necessary for this vessel to depart from the accustomed route; if some unforeseen contingency which may sometimes happen, owing to the perils and the danger of navigation, required this change, it would have been justifiable and allowable. But there is no proof in this case that there was any reason or cause for this departure from the course of the ship; nothing in the condition of the vessel, its equipment, or any other cause, is given making this necessary."

So far, then, as we can see, this being a useless, needless and unwarrantable departure from the course of the ship, and from the route over which the plaintiff was to be transported, for any injury which the plaintiff sustained in consequence of such departure the company is responsible to him.

We think the rule of law adopted on the trial, on this subject, was correct. The position of the defendant's vessel, without reason and without explanation of the cause, could awaken no other pre-

sumption than that of negligence. She was out of her course and in a dangerous locality, without capable guides. There was a wind storm, but it was not extraordinary, and sea-going vessels are prepared to meet and weather storms, if properly constructed according to modern revelations and officered and manned by men who know their business. If the vessel was by overwhelming force of wind or current blown or carried so far out of her direct course as to be where she was when she stranded, it was for the defendant to show it. But, as said before, no explanation was given which could be accepted. The rules applicable to common carriers when they undertake to carry human beings cannot be loosely applied or generously framed. We can secure greater safety, which is a high privilege and exalting duty, by holding such enterprises within strict bounds. Great care and great caution must be exacted and enforced.

Motion for new trial denied; plaintiff is entitled to judgment.

DAVIS, P. J., and DANIELS, J., concurred.

Ordered accordingly.