GEORGE RUPPEL, Respondent, *against* THE MANHATTAN RAILWAY COMPANY, Appellant.

(Decided November 14th, 1884.)

In an action against an elevated railway company for damages from a fire caused by sparks from defendant's locomotive, evidence that the locomotive, at the time of the injury, emitted a quantity of sparks so large and so brilliant that the attention of the witness, who had frequent opportunities for observation, was immediately attracted, is sufficient to make a *prima facie* case of negligence against defendant.

APPEAL from a judgment of the district court in the City of New York for the Ninth Judicial District.

The facts are stated in the opinion.

*Robert C. Deyo*, for appellant.

*Robert Bonynge*, for respondent.

VAN HOESEN, J.—An examination of the evidence has failed to satisfy me that the justice committed an error in leaving the case to the jury. The only evidence of negligence was given by the witness Kelly, who appears to me to be rather a dull man, and one whose statements, without any intention on his part of testifying falsely, are not always

consistent. I make this comment on Kelly because I find that on page 11 he said, " the engine was going down town and I was going up," and on page 29 he says, " the train was going towards the Harlem bridge; to the north." Perhaps he did not know which way the engine was going; but whether he did or not, the impression left upon my mind is that the man meant to be truthful, and that his testimony is, in the main, entitled to credit. Kelly thus describes the origin of the fire that consumed the plaintiff's awning :

" I was," he says, " coming along Third avenue, when my attention was attracted by the puffing of an engine, and the smoke and a volume of sparks arising from the smoke stack. I watched it very closely as it lit upon the awning. I saw a little smoke arising, and all of a sudden it blazed, so I ran right into the store and hallooed to Mr. Ruppel. It was quite a quantity of sparks that arose from the smoke stack. The sparks were unusual in degree to the best of my knowledge. I am on Third avenue almost every day, from Seventy-fifth street to One Hundred and Twenty-fifth street. I am very careful when I see sparks falling out of the smoke stack. It is not uncommon for smoke to escape from the smoke stack. Fire also often escapes by the puffing of the engine starting so that it causes more fire, and it throws up more of these sparks. I noticed the sparks in large volume at the time she was coming. When the sparks were emitted the smoke stack was not more than twenty-five or thirty feet from Ruppel's restaurant. My attention was first attracted by the sparks. The sparks were red. It was about one o'clock in the afternoon. I cannot say that I ever saw so large a quantity of sparks on any other occasion. I might have seen them emit a larger quantity of sparks on one or two other occasions. I suppose I have seen locomotives emit sparks on three or four different occasions altogether, before Ruppel's awning was burned. I have seen locomotives a great many times when no sparks were emitted. In the day time you could not notice the red light in such volume, but in the night time it can be seen very plain. What attracted my attention on this occa-

sion was the red sparks blazing from the smoke stack. It was the quantity of sparks that attracted me, as naturally it would. At night I have noticed red sparks on other occasions, but not in the day time."

The sole question brought up by this appeal is, was this evidence sufficient to make out a *prima facie* case of negligence against the defendant? Under the decisions in this state, I am inclined to think it was.

In *Field* v. *New York Central R. R. Co.* (32 N. Y. 349), Judge DAVIS said : " We have not in this state adopted the rule of the English courts, which in substance holds that proof that fire was communicated from the engines of the company, throws upon the defendant the burden of showing that there was no want of care, diligence or skill in their construction or management. Our rule holds that the use of locomotive engines in the business of railroads being lawful, no presumption of negligence arises from the mere fact that fire has been communicated from them. But where there is any evidence on the part of the plaintiff that tends to show want of care or diligence in the management of the engines or want of skill in their construction, the court has no right to take the question of negligence from the jury unless the preponderance of evidence for the defendant is so great that a verdict for the plaintiff would be set aside as against evidence."

In the same case Judge WRIGHT said : " If I understand the position of the defendant correctly, it is that in this class of cases it is incumbent on the plaintiff, if he would make out a *prima facie* case, to show affirmatively that there was something improper in the construction of the defendant's engines, or that they were not in order, or were insufficiently or improperly managed. This is not the rule. Undoubtedly, the burden of proving that the injury complained of was caused by the defendant's negligence was upon the plaintiff. To show negligence, however, it was not necessary to prove affirmatively that there was something unsuitable or improper in the construction or condition or management of the engine. The fact that the

sparks were scattered upon their roadway in such quantity as to endanger property on abutting premises, raised an inference of some weight that the engines were improperly constructed or managed. It often happens that the same evidence that proves the injury, shows such attending circumstances as to raise a presumption of negligence which casts on the offending party the burden of disproving it."

In *Bedell* v. *The Long Island R. R. Co.* (44 N. Y. 369), Judge EARLE said : " The mere fact that large sparks were emitted from the engine in such profusion and were carried to such a distance as to set fire to adjoining fences and buildings, is sufficient to show that there was some carelessness, as common observation and experience teach that engines can be and are run through the country without such dangerous consequences."

In *Bevier* v. *Delaware & Hudson Can. Co.* (13 Hun 257), Judge MULLIN said : " It is incumbent on the plaintiff to prove that an engine scattered from its fire pan or smoke stack fire in such quantity and in coals of such size as could not be thrown off from an engine whose smoke stack and other parts were in proper repair."

It will be observed that Judge EARLE, in the Bedell case, said that we might, without proof, take notice of the fact that engines can be run without endangering property adjacent to the road, and that we may safely draw the inference of negligence from the scattering of large coals in great abundance upon buildings in proximity to the track.

In *McCaig* v. *The Erie Co.* (8 Hun 599), Judge E. DARWIN SMITH said : " To warrant a verdict for the plaintiff, the evidence should have shown that the sparks were unusual in degree or character, or of extraordinary size, or such as could not be emitted from a perfectly constructed locomotive."

Although the case last cited is not to be taken as authority as to all it purports to decide, it is correct in holding that the plaintiff must prove, in order to recover, not merely that sparks escaped, but also that they came of such size, or in such numbers, that it is reasonable to draw the inference

that the locomotive from which they issued was badly constructed, out of order, or badly managed.

In Addison on Torts (Dudley & Baylies'· ed., vol. 1, p. 307, n.), it is said that " the repeated and unusual dropping of coal, or the excessive and continued emission of sparks, warrants the conclusion that the company was negligent."

I know of but one case in the State of New York, that of *Case* v. *Northern Central R. R. Co.* (59 Barb. 644), that holds that on mere proof that the defendant's engine caused the fire by emitting sparks the plaintiff is entitled to recover unless the defendant shows affirmatively that it was not negligent.

The witness Kelly proved that there was a " volume of sparks," unusual in quantity and of a red color, which indicated that they were live coals ; that he had never in the day time before seen red sparks from the engines on defendant's road ; that the sparks blazed from the smoke stack ; that he had on three or four occasions seen sparks issue from the defendant's engines, but that he had often seen engines from which no sparks proceeded. The quantity of sparks was so large and so unusual that his attention was immediately attracted. He was a sanitary inspector, and on the avenue almost every day. He thus had opportunities for observation. On evidence of this character the following observations have been made by the Supreme Court of Kansas : " To show negligence, evidence that sparks were frequently emitted is admissible. You may show that while the particular engine sent out fire on the day in question, other engines did not. Such evidence would lead irresistibly to the conclusion that there was negligence somewhere. Of course it would not locate the negligence. It would not show whether the fault was with the engine or with the engineer ; whether the engine was good, but out of order, or bad, though in order ; whether the engineer was competent, but acted carelessly, or incompetent, though he acted as well as he knew how. It would not show in what particular the engine was bad or out of order, or in what the en-

gineer was in fault.   Yet such evidence is competent, and it would be about the best the plaintiff, in some cases, could obtain."

The evidence for the plaintiff is far from conclusive, but yet I cannot say that there is no evidence at all of negligence. We cannot determine in what it consisted—whether in the defective condition of the engine or in the careless management of the engineer; but I think the jury was warranted in finding that the emission of a volume of live sparks, unusual in quantity and of so brilliant a color that their brightness did not pale before the rays of the midday sun, was so much out of the ordinary course of events that it must have been caused by some force that is seldom in operation. As Judge EARLE said in the Bedell case: " Our experience and observation teach us that locomotives can be and are constantly operated without setting fire to adjacent property," and when any extraordinary display of sparks is made at the time an engine starts a fire, I think a jury may, in the absence of all explanation, conclude that there was something wrong with the engine or with the engineer.

I think the judgment should be affirmed.

LARREMORE, J., concurred.

Judgment affirmed.