### COLLINS v. NEW YORK CENT. & H. R. R. Co.

*(Supreme Court, General Term, Fifth Department. October 23, 1890.)*

RAILROAD COMPANIES—FIRES—EVIDENCE.

In an action against a railroad company for negligently setting fire to plaintiff's property, where the issue involved was whether a particular engine of defendant, or one operated by another company, caused the fire, it appeared that the latter engine passed the scene of the fire a few minutes before defendant's engine, and that no one saw any evidence of the escape of dangerous cinders, but that, immediately after defendant's engine had passed, the fire which caused the loss was discovered. Several witnesses testified to the emission of large burning coals from defendant's engine, and it was also shown that such engine had previously caused several fires in the neighborhood. *Held*, that a judgment in plaintiff's favor would not be disturbed.

Appeal from circuit court, Niagara county.

Action by Thomas Collins against the New York Central & Hudson River Railroad Company. There was a verdict for plaintiff for $4,503.96. From the judgment entered thereon, defendant appeals. For report of a former appeal see 16 N. E. Rep. 50.

Argued before DWIGHT, P. J., and MACOMBER, J.

*James F. Gluck*, for appellant. *Frank Brundage*, for respondent.

MACOMBER, J. This action is brought to recover the value of two barns, and a shed attached to one of them, an ice-house, a milk-house, and a stack of straw containing about 10 tons, which were destroyed by fire May 5, 1882, communicated, as is contended by the plaintiff, by sparks or coals of fire escaping from locomotive No. 113, operated by the defendant. The defendant's railroad track crosses the plaintiff's farm which lies between Tonawanda and La Salle, in Niagara county. The plaintiff's dwelling-house and barns, at the time of the fire, were located at the north side of the highway which runs from Tonawanda to Niagara Falls. The barns so burned were known as the old barn and the new one, the latter of which was about four rods from the defendant's track, while the old barn was about eight rods therefrom. At the time of the fire, a straw stack stood at the north-east corner of the new barn, between the barn and the defendant's track. A board fence about six feet high separated the straw stack from the defendant's track. The track of the Erie Railroad also crosses the plaintiff's farm parallel with the defendant's track, and about four rods distant northerly therefrom. The fact that the fire originated through sparks escaping from the smoke-stack of a locomotive, operated either upon the defendant's road or upon the Erie road, and that such fire destroyed the property of the plaintiff of the value above

mentioned, is not disputed.   The controversy turns upon the contention made by the plaintiff that it was the engine of the defendant which emitted the sparks causing the fire, while the argument in behalf of the defendant is that it is at least doubtful which locomotive caused the injury, and that, therefore, the plaintiff cannot recover.   Upon the former trial of this case, a like recovery was had, which was sustained by the general term; but, on appeal to the court of appeals, the judgment thereon was reversed, and a new trial granted upon the ground of the exclusion of certain competent evidence, and upon the admission of other certain incompetent evidence.   The case upon the new trial presents no question which was passed upon by the court of appeals; indeed, the case was tried with great circumspection in that regard.   The question whether locomotive No. 113, operated by the defendant, or locomotive No. 19, operated by the Erie Company, caused the fire, presented a question of fact.   The evidence brings the case within the principles stated in *Crist* v. *Railway Co.*, 58 N. Y. 638; *O'Neill* v. *Railroad Co.*, 115 N. Y. 579, 22 N. E. Rep. 217; *Webb* v. *Railroad Co.*, 49 N. Y. 420; and other authorities which might be cited.   Engine No. 113 had drawn trains from Buffalo to Niagara Falls for two or three years previous to the time of this fire, going down to the falls between 9 and 10 o'clock in the morning, returning to Buffalo about noon, again going to the falls at 3 in the afternoon, and back to Buffalo at 7 at night.   Engine No. 19 operated by the Erie Company, ran down to Buffalo from Niagara Falls at about 9 o'clock in the morning, back to Buffalo at about a quarter before 12, and returned again about 3 in the afternoon, bringing up to Buffalo again at 7 o'clock in the evening.   This is substantially the undisputed evidence relating to the general movements of these engines; but the witnesses differ in matter of minutes, and the trains were sometimes not upon schedule time.   The locomotive on the Erie track had passed a few minutes, variously estimated from 2 to 15, before the defendant's engine went up.   No one saw any evidence of the escape of dangerous cinders from the Erie locomotive, or any fire originating therefrom, either by the way-side or in the adjoining fields, at the time in question.   Immediately, however, after the passing of the defendant's engine, fire was discovered in the straw stack of the plaintiff, which resulted in the loss already mentioned.   Many witnesses testified to the emission of large burning coals from the smoke-stack of the defendant's engine, and obviously these were sufficient to cause the fire; for the jury from this testimony could properly draw the inference that these burning coals, being a quarter to half an inch in diameter, were thrown high in the air, and were subject more or less to gusts of wind.   Much evidence was given in behalf of the defendant, designed to show that the smoke-stack then in use on engine No. 113 was of an approved pattern, and that the same was not out of order.   On the contrary, it was proved by the defendant's master mechanic that the diamond stack, the style then in use upon the Erie road, had been used for years upon the defendant's road; that engine No. 113 had what is known as an "extension arch," having a large netting with 12-32 of an inch meshes.   It was claimed that the larger meshes were used in the extension arch so as to get better draft, and that, aside from the question of preventing the escape of cinders and sparks, the extension smoke-stack was as good as any in use at that time.   This may well be conceded, and yet the defendant is not relieved from responsibility.   *O'Neill* v. *Railroad Co.*, 115 N. Y. 579–583, 22 N. E. Rep. 217; *Bedell* v. *Railroad Co.*, 44 N. Y. 367. Several witnesses testified to the fact that this engine No. 113 had caused several fires in that vicinity in the spring preceding the time in question. Indeed, the character of this particular engine for causing fires was well known in that region, and in a specially dry time it appears to have been with a feeling of relief on the part of the farmers when she had passed without causing or threatening any injury to their property.   The preponderance of the evidence is clearly in favor of the plaintiff's contention that the loss of

his property was caused directly by the fire communicated by the defendant's engine, either through defective construction or through careless operation. The judgment and order appealed from should be affirmed.

DWIGHT, P. J., concurs.   CORLETT, J., not sitting.