The judgment should be affirmed, with costs.    All concur.

---

(67 Hun, 631.)

FLINN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, General Term, Third Department.    February 15, 1893.)

1. RAILROAD COMPANIES—FIRES—PROOF OF NEGLIGENCE.
    In an action for damages for burning a building by sparks from defendant's locomotive, the evidence disclosed that other engines than defendant's ran over the same track, near plaintiff's building, but that defendant's engines were often stalled in front of the building, when large sparks were thrown on it, setting it on fire. These fires continued about 10 years, until the building was finally burned. There was no testimony that any engines other than defendant's were stalled or emitted sparks, and all the evidence relating to the emission of sparks pointed to defendant's engines. *Held*, that it was for the jury to say whether defendant's engines caused the injury to plaintiff's building.

2. SAME—DEFECTIVE APPLIANCES.
    Where, for a number of years, plaintiff's house was repeatedly fired by showers of sparks thrown out by defendant's freight engines. so as to endanger buildings other than plaintiff's, and, four years before the burning of plaintiff's building. defendant adopted an improved smokestack for its passenger engines, which removed two thirds of the danger from sparks, but continued to use the old smokestacks on its freight engines, it was for the jury to say whether plaintiff's injury resulted from negligence in using the old smokestacks, and whether they were obviously dangerous. Steinweg v. Railway Co., 43 N. Y. 123; Lafflin v. Railroad Co., 12 N. E. Rep. 599, 106 N. Y. 136; Burke v. Witherbee, 98 N. Y. 562,—distinguished.

3. SAME—ADOPTION OF IMPROVED APPLIANCES.
    In such case plaintiff could not recover for damages to his house, caused by defendant's failure to adopt the new smokestack, which occurred prior to the time the new smokestack was placed on the passenger engines.

4. SAME.
    The fact that defendant's engines frequently emitted showers of sparks on plaintiff's house, firing it on several occasions. is some evidence of negligence in the use of defendant's appliances prior to the adoption of the new smokestack.

5. INSTRUCTIONS—WEIGHT OF EVIDENCE.
    The testimony of a witness that is contradictory, weak, and inconclusive should go to the jury for what it is worth, and the court should not instruct the jury to disregard it.

Appeal from circuit court, Albany county.

Action by Peter J. Flinn against the New York Central & Hudson River Railroad Company. From a judgment entered on a verdict in favor of plaintiff for $1,641 damages and $378.49 costs, and from an order denying a motion on the minutes to set aside the verdict as excessive and against the law and evidence, defendant appeals. Affirmed.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

Hale & Bulkley, (Matthew Hale, of counsel,) for appellant.
Parker & Countryman, (E. Countryman, of counsel,) for respondent.

PUTNAM, J.    It is conceded that the former decision by the general term (12 N. Y. Supp. 341) in this case determines that negligence can-

not be imputed to defendant for laying its track on any part of the premises referred to in the complaint, however near plaintiff's building, or in running long and heavy trains thereon. Hence the only questions before us are (1) whether there was sufficient evidence in the case to submit to the jury, indicating that the fires which injured plaintiff's building were caused by sparks from defendant's engines, and, if so, whether the emission of said sparks was due to any negligence on the part of defendant; and (2) whether any exception, taken on the trial to the rulings of the trial judge, to his charge or his refusal to charge, should cause a reversal of the judgment. I think there was sufficient evidence that the fires which injured and destroyed plaintiff's building were caused by defendant's engines. The plaintiff testified:

"The showers of sparks and smoke would be thrown into the windows, if they were open, in warm weather, and set fire to the carpet. I am speaking what they did. The effect was still greater if they did not pass readily,—if they were lodged there,—because it was up grade, and the trains would sometimes become stalled,—impossible for the engines to do their work; and then, if the locomotives were lodged in front of the building, showers of sparks would be thrown all about, and if it were dry weather the building would take fire, and sometimes, when it was not dry, it would take fire. The entire roof and alley, and all about there, would be flooded with these live coals. This state of things continued about ten years. The final result was that the house was destroyed. These fires continued from 1874, the time the additional track was laid, until the destruction of the building by one of those fires, in August, 1884. I visited this house immediately after it had been set fire. I went there to see how much damage had been done, and to see about getting it repaired. I have gone there perhaps five or six times after these fires, when I would be at home. I can't give the dates. Perhaps in 1876, 1877, and 1878, along that way; in 1879. I would notice the floor of the building,—the cinders. If there had been a hole burned in the roof in a day or so, without being repaired, the hole remained there. Then the cinders would come in, and around about there. It would be two or three or four inches deep of these large cinders."

Michael Cantwell also testified as follows:

"Remember the fires to the premises described. These fires seemed to be on the roof when I got there. Saw sparks from the engine on the roof. I never measured them. The tenants moved out. I know about the tenants. I talked with the tenants. I think they were an inch and a half, and larger; a chunk of coal probably an inch and a half. Have seen fires catch from these sparks. Have been in the yard, and seen the engines work outside, and the sparks settle on the building, and set it on fire, and I extinguished it."

There was other testimony given on the trial, indicating that the fires which injured plaintiff's premises were caused by defendant's engines,—evidence sufficient to sustain a verdict in favor of the plaintiff. Sheldon v. Railroad Co., 14 N. Y. 218; Crist v. Railway Co., 58 N. Y. 638; O'Neill v. Railroad Co., 115 N. Y. 579, 22 N. E. Rep. 217.

It is suggested, however, that the engines of the Boston & Albany Railroad Company, also, at the time in question, ran over the same track, and that it is impossible to tell whether the fires in question were caused by the engines of the latter company, or defendant's. It must be admitted that the testimony in the case as to the origin of the fire is not very clear or decisive, but the evidence given by all the witnesses showing the emission of sparks and cinders from engines seems to point to those of defendant. Thus, the witness Judge swore that the engines

he referred to were those of the New York Central Railroad Company. Hughes swore he never saw a Boston & Albany engine stalled. Almost all the evidence in the case indicating that plaintiff's house was injured by sparks points to the defendant's engines as emitting them. It was therefore a question of fact, to be submitted to the jury, whether or not the defendant's freight engines caused the injury to plaintiff's building. Collins v. Railroad Co., (Sup.) 11 N. Y. Supp. 308. It will be seen that this case differs from Searles v. Railway Co., 101 N. Y. 661, 5 N. E. Rep. 66, and McDermott v. Railroad Co., 8 Wkly. Dig. 531, to which defendant refers. In this case there was evidence sufficient to submit to the jury tending to show, and which made it probable, that the fires in question were caused by defendant's engines.

It is claimed by defendant that, assuming the injury to plaintiff's premises was caused by sparks from its freight engines, yet there is no evidence to show negligence on the part of defendant in causing the emission of said sparks by the use of improper spark arresters; that railroad companies are not bound to use appliances that have not been tested, although approved by the highest scientific authority. They are required to use only those that have been not only tested, but put in general use, (Steinweg v. Railway Co., 43 N. Y. 123;) that, where an appliance not obviously dangerous has been in daily use for years, they may continue to use the same without the imputation of negligence, (Lafflin v. Railroad Co., 106 N. Y. 136, 12 N. E. Rep. 599; Burke v. Witherbee, 98 N. Y. 562.) But in fact there was evidence in the case from which the jury could properly find that the engines used by the defendant were obviously dangerous,—evidence indicating that plaintiff's house, for a number of years prior to 1884, had been repeatedly fired by those engines, they throwing out, for a considerable distance from its track, showers of large sparks that were liable to fire the building of plaintiff and others. Therefore the above cases cited by appellant are not decisive of the question before us. In 1879 or 1880 a new kind of smokestack and spark arrester came into use, and was placed by defendant on its passenger engines, but not on those drawing freight trains. On freight engines the defendant continued to use the old "Diamond" smokestack. The evidence in the case shows that the new smokestack greatly diminished the amount of sparks emitted. One witness testified that only one third as many sparks would issue from the new arrester as from the old Diamond smokestack. The doctrine is now established that, while railroad companies are not bound to adopt an untried machine, or to use every possible prevention which the highest scientific skill might suggest, yet they are guilty of negligence if they fail to adopt the most approved mode of construction and machinery in known practical use. Steinweg v. Railway Co., 43 N. Y. 127; Burke v. Railroad Co., 13 Daly, 81; Bevier v. Canal Co., 13 Hun, 258; Crist v. Railway Co., 58 N. Y. 639. Although the facts of the cases are not alike, I think the correct doctrine, as applicable to this case, is laid down in Smith v. Railroad Co., 19 N. Y. 127, viz.:

"A railroad company is liable to damages for any injury resulting * *. * from its neglect to introduce any improvement in its apparatus, which is known to

have been tested, and found materially to contribute to safety, the adoption of which is within its power, so as to be reasonably practical."

It was shown that the new smokestack and arrester was much better than the old Diamond stack; it only emitting one third as many sparks. The defendant could, without the imputation of negligence, take a reasonable time to place the new appliance on its freight engines. Whether from 1879 to 1884 was a reasonable period was a question of fact, which the judge properly submitted to the jury. If the old engines, with the Diamond stacks, constantly set fire to wooden buildings near its tracks, and the new smokestack would decrease the sparks emitted two thirds, and thus greatly diminish the probabilities of fires, the jury might properly have found that the defendant was negligent in not adopting the new arrester within four or five years. I think, therefore, that the trial judge, properly submitted to the jury the question whether the damage to plaintiff's house was caused by defendant's negligent omission to place on its freight engines the new smokestack and spark arrester. The appellant put the new smokestack on its passenger engines in 1880. The appliance, therefore, was then in practical use, to the knowledge of the company, and its officers and servants must have known that this new smokestack materially diminished the risk of fire from sparks from the engines. It was a serious question whether, under the circumstances, the defendant should not in 1880 or 1881, or prior to 1884, have placed this new spark arrester on its freight engines. This question was properly submitted to the jury by the trial judge, in a fair and impartial charge. For the reasons above stated the court did not err in declining to charge, as requested, that the jury could not find that the defendant was guilty of negligence in using the old smokestack and spark arrester it did prior to 1884, and also that there was no evidence in the case from which the jury could say that defendant was negligent in not using some other kind of smokestack than it did.* As we have seen, these were questions of fact for the jury, not questions of law for the court.

The defendant might properly have asked the court to charge that the defendant was not guilty of negligence in not adopting the new arrester immediately after its discovery; that it had a reasonable time after such appliance came into practical use within which to adopt it. What was a reasonable time was a question of fact for the jury to determine. I think that defendant was entitled to the instruction that no recovery can be had for damage prior to 1879 by reason of defendant's not having adopted the new spark arrester. The trial judge seems not to have understood the request, and his answer was practically a refusal to instruct the jury as requested. But, on examination of his charge, it will be seen that he had already, in effect, thus charged. There was no dispute whatever in the evidence that the new arrester was first used in 1879 or 1880. The judge instructed the jury as follows:

"It is for you to determine whether the evidence in the case justifies you in saying that they were negligent in refusing to adopt the new appliance that has been spoken of. * * * Whether, in other words, if they had adopted in 1879, 1880, 1881, 1882, and 1883, before this fire occurred, * * * the new appliance that has been referred to, that then this building would have been destroyed, or

its rental value depreciated. You will have to find all these things. You will have to find that they * * * negligently refused to adopt the modern appliances, which were in practical operation, and had received the test of experience. "

It will thus be seen that the court below, in effect, instructed the jury that the negligence, if any, of defendant, in failing to use the new appliance, was in the years 1879, 1880, 1881, 1882, and 1883. Having so charged the jury, he was not called upon to repeat the instruction.

I also think that the court correctly declined to charge that there was no evidence in the case upon which the jury could find that the defendant was negligent in the use of the appliances it had prior to 1879. Without considering the evidence of Kirk, there was some evidence of negligence on the part of defendant prior to 1879. It is decided in Field v. Railroad Co., 32 N. Y. 346, that "the fact that the sparks or coals were scattered at all upon their roadway in such quantities as to endanger property on abutting premises raised an inference of some weight that the engines were improperly constructed or managed." See, also, Bedell v. Railroad Co., 44 N. Y. 369; O'Neill v. Railroad Co., 115 N. Y. 583, 584, 22 N. E. Rep. 217; Shear. & R. Neg. (2d Ed.) § 33; Sugarman v. Railroad Co., (Com. Pl. N. Y.) 16 N. Y. Supp. 533; Ruppel v. Railroad Co., 13 Daly, 11. In this case there was abundant evidence showing that showers of sparks were frequently emitted from defendant's freight engines, on plaintiff's house, setting fire to it, on several occasions. This, within the cases above cited, was evidence of negligence on the part of the defendant, justifying the refusal of the court to charge as requested.

I do not think the judge erred in declining to instruct the jury to disregard the evidence of plaintiff that the market value of his house was $700 or $800, on the ground that the witness, on cross-examination, stated that he understood by the market value of the house what it would cost to replace it. The witness had contradicted himself. He first swore that he meant by the market value what it would cost to replace it. He was afterwards asked and answered as follows:

"Question. Do you understand that the cost of rebuilding or replacing a building is the proper test of market value? Answer. No, sir; I don't. Q. Do you understand that the market value of a building means what it will bring in the market? A. Yes, sir. Q. But, in making your answer of $1,200 as the market value of your building, you say you meant what it would cost to replace it? A. Yes, sir."

The witness was not asked whether, in placing the market value at $700 or $800, he meant what it would cost to replace the house. The meaning of the witness is somewhat doubtful. Under the circumstances, I think the testimony was properly submitted to the jury by the trial judge, as weak and inconclusive evidence.

Other exceptions were taken on the part of the defendant, which I do not deem it necessary to discuss. I conclude that the judgment should be affirmed, with costs.

MAYHAM, P. J., concurs. HERRICK, J., not acting.