PETER J. FLINN, RESPONDENT, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Continued injury to a building by the emission of sparks from a locomotive — evidence — improved appliances for railroads — new spark-arrester — negligence in not adopting it on freight engines.*

The evidence, in an action against a railroad company for injuries to a building from sparks emitted from passing locomotives, indicated that the building during a number of years had been repeatedly set on fire by the defendant's freight engines, and that such engines threw out, for a considerable distance from the track, showers of large sparks that were liable to set the building on fire.

*Held*, that there was sufficient evidence to justify the submission of the case to the jury upon the question whether the fires which injured the building were caused by the defendant's engines, although the same tracks were used by engines of another company, there being evidence from which the jury could properly find that the engines used by the defendant were obviously dangerous.

While railroad companies are not bound to adopt an untried machine, or to use every possible prevention which the highest scientific skill might suggest, yet they are guilty of negligence if they fail to adopt the most approved mode of construction and machinery in known practical use.

A new and improved smoke stack and spark-arrester came into use in 1879, and was then placed by the defendant company on its passenger engines:

*Held*, that the company could, without the imputation of negligence, take a reasonable time within which to place the new appliance on its freight engines, but that whether from 1879 to 1884 was a reasonable time to omit such adoption was a question of fact for the jury.

That while no recovery could be had for damages to the building in suit prior to 1879, the date when the new spark-arrester came into practical use, by reason

of the defendant's not having adopted the new arrester on its freight engines, still, as there was evidence showing that showers of sparks were frequently emitted from freight engines and fell upon the building prior to 1879, setting fire to it on several occasions, a request to charge that there was no evidence in the case upon which the jury could find that the defendant was negligent in the use of the appliances it had in use prior to 1879, was properly declined.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from a judgment, entered in the office of the clerk of Albany county on the 27th day of January, 1892, in favor of the plaintiff, on a verdict for $1,641 damages rendered at the Albany Circuit, and from an order denying a motion for a new trial made upon the minutes, entered in said clerk's office on the 25th day of January, 1892.

The action was brought in December, 1884, to recover damages for injuries alleged to have been caused to a building belonging to the plaintiff on Railroad avenue in the city of Albany, by reason of the negligence of the defendant in laying additional tracks and in the operation of its locomotives. It was claimed that the injuries began when the additional tracks were laid, which was in 1874, and that the premises deteriorated from that time in rental value, and finally became untenantable through a fire caused by sparks cast upon it from the defendant's engines.

*Matthew Hale*, for the appellant.

*E. Countryman*, for the respondent.

PUTNAM, J.:

It is conceded that the former decision by the General Term in this case * determines that negligence cannot be imputed to defendant for laying its track *on any part* of the premises referred to in the complaint, however near plaintiff's building, or in running long and heavy trains thereon. Hence the only questions before us are (1), whether there was sufficient evidence in the case to submit to the jury indicating that the fires which injured plaintiff's building were caused by sparks from defendant's engines, and if so, whether the emission of said sparks was due to any negligence on the part of defendant; and (2), whether any exceptions taken on the trial to the

---

* NOTE.— Reported 58 Hun, 230.

rulings of the trial judge, to his charge, or his refusal to charge, should cause a reversal of the judgment.

I think there was sufficient evidence that the fires which injured and destroyed plaintiff's building were caused by defendant's engines.

The plaintiff testified : " The showers of sparks and smoke would be thrown into the windows, if they were open in warm weather, and set fire to the carpet; I am speaking what they did; the effect was still greater if they did not pass readily; if they were lodged there, because it was up-grade, and the trains would sometimes become stalled; impossible for the locomotives to do their work, and then, if the locomotives were lodged in front of that building, showers of sparks would be thrown all about, and, if it were dry weather, the building would take fire, and sometimes when it was not dry it would take fire; the entire roof and alley and all about there would be flooded with these live coals; *this state of things continued about ten years; the final result was that the house was destroyed; these fires continued from 1874, the time the additional track was laid, until the destruction of the building by one of these fires in August, 1884."* \* \* \* " I visited this house immediately after it had been set afire; I went there to see how much damage had been done, and to see about getting it repaired; I have gone there, perhaps, five or six times after these fires, when I would be at home; I can't give the dates; perhaps, in 1876, 1877 and 1878, along that way; in 1879; I would notice the floor of the building — the cinders, if there had been a hole burned in the roof in a day or so, without being repaired, the hole remained there, then the cinders would come in and around about there; it would be two or three or four inches deep of these large cinders."

Michael Cantwell also testified as follows : " Remember the fires to the premises described; these fires seemed to be on the roof when I got there; saw sparks from the engine on the roof; I never measured them; the tenants moved out; I knew about the tenants; I talked with the tenants; I think they were an inch and a half and larger; a chunk of coal probably an inch and a half; have seen fires catch from these sparks; have been in the yard and seen the engines work outside, and the sparks settle on the building and set it on fire, and I extinguished it."

HUN—VOL. LXVII     80

There was other testimony given on the trial indicating that the fires which injured plaintiff's premises were caused by defendant's engines, evidence sufficient to sustain a verdict in favor of the plaintiff. (*Sheldon* v. *Hudson River R. R. Co.*, 14 N. Y., 218; *Crist* v. *Erie Railway Co.*, 58 id., 638; *O'Neill* v. *N. Y., O. and W. R. R. Co.*, 115 id., 579.)

It is suggested, however, that the engines of the Boston and Albany Railroad Company also, at the time in question, run over the same track, and that it is impossible to tell whether the fires in question were caused by the engines of the latter company or defendant's. It must be admitted that the testimony in the case as to the orgin of the fire is not very clear or decisive, but the evidence given by all the witnesses showing the emission of sparks and cinders from engines seems to point to those of defendant. Thus the witness Judge swore that the engines he referred to were those of the New York Central Railroad Company.

Hughes swore he never saw a Boston and Albany engine stalled. Almost all the evidence in the case indicating that plaintiff's house was injured by sparks point to the defendant's engines as emitting them. It was, therefore, a question of fact to be submitted to the jury whether or not the defendant's freight engines caused the injury to plaintiff's building. (*Collins* v. *N. Y. C. and H. R. R. R. Co.*, 33 N. Y. St. Rep., 570, 571.)

It will be seen that this case differs from *Searles* v. *Manhattan Railway Company* (101 N. Y., 661), and *McDermott* v. *New York Central and Hudson River Railroad Company* (8 Week. Dig., 531), to which defendant refers. In this case there was evidence sufficient to submit to the jury tending to show, and which made it probable that the fires in question were caused by defendant's engines.

It is claimed by defendant that, assuming the injury to plaintiff's premises was caused by sparks from its freight engines, yet, there is no evidence to show negligence on the part of defendant in causing the emission of said sparks by the use of improper spark-arresters. That railroad companies are not bound to use appliances that have not been tested, although approved by the highest scientific authority. They are required to use only those that have been not only tested, but put in general use. (*Steinweg* v. *Erie Railway*, 43 N. Y., 123.) That where an appliance, not obviously dangerous,

has been in daily use for years, they may continue to use the same without the imputation of negligence. (*Lafflin* v. *B. and S. R. R. Co.*, 106 N. Y., 136; *Burke* v. *Witherbee*, 98 id., 562.) But, in fact, there was evidence in the case from which the jury could properly find that the engines used by the defendants were obviously dangerous; evidence indicating that plaintiff's house, for a number of years prior to 1884, had been repeatedly fired by those engines, they throwing out, for a considerable distance from its track, showers of large sparks that were liable to fire the building of plaintiff and others. Therefore, the above cases cited by appellant are not decisive of the question before us.

In 1879 or 1880, a new kind of smoke stack and spark-arrester came into use, and was placed by defendant on its passenger engines, but not on those drawing freight trains. On freight engines, the defendant continued to use the old diamond smoke stack. The evidence in the case shows that the new smoke stack greatly diminished the amount of sparks emitted. One witness testified that only one-third as many sparks would issue from the new arrester as from the old diamond smoke stack.

The doctrine is now established that while railroad companies are not bound to adopt an untried machine, or to use every possible prevention which the highest scientific skill might suggest, yet, they are guilty of negligence if they fail to adopt the most approved mode of construction and machinery in known practical use. (*Steinweg* v. *Erie Railway Co.*, 43 N. Y., 127; *Burke* v. *Manhattan R. Co.*, 13 Daly, 81; *Bevier* v. *Delaware and Hudson C. Co.*, 13 Hun, 258; *Crist* v. *The Erie Railway Co.*, 58 N. Y., 639.)

Although the facts of the case are not alike, I think it, the correct doctrine as applicable to this case, is laid down in *Smith* v. *The New York and Harlem Railroad Company* (19 N. Y., 127), viz.: "A railroad company is liable in damages for an injury resulting * * * from its neglect to introduce any improvement in its apparatus which is known to have been tested and found materially to contribute to safety, the adoption of which is within its power so as to be reasonably practicable."

It was shown that the new smoke stack and arrester was much better than the old diamond stack, it only emitting one-third as many sparks. The defendant could, without the imputation of negli-

gence, take a reasonable time to place the new appliance on its freight engines.   Whether, from 1879 to 1884 was a reasonable period was a question of fact which the judge properly submitted to the jury. If the old engines with the diamond stacks constantly set fire to wooden buildings near its tracks, and the new smoke stack would decrease the sparks emitted two-thirds, and thus greatly diminish the probabilities of fires, the jury might properly have found that the defendant was negligent in not adopting the new arrester within four or five years.   I think, therefore, that the trial judge properly submitted to the jury the question whether the damage to plaintiff's house was caused by defendant's negligent omission to place on its freight engines the new smoke stack and spark-arrester.

The appellant put the new smoke stack on its passenger engines in 1880.   The appliance, therefore, was then in practical use to the knowledge of the company, and its officers and servants must have known that this new smoke stack materially diminished the risk of fire from sparks from the engines.   It was a serious question whether, under the circumstances, the defendant should not, in 1880 or 1881, or prior to 1884, have placed this new spark-arrester on its freight engines.   This question was properly submitted to the jury by the trial judge in a fair and impartial charge.

For the reasons above stated the court did not err in declining to charge, as requested, that the jury could not find that the defendant was guilty of negligence in using the old smoke stack and spark-arrester it did prior to 1884; and, also, that there was no evidence in the case from which the jury could say that defendant was negligent in not using some other kind of smoke stack than it did.   As we have seen, these were questions of fact for the jury, not questions of law for the court.   The defendant might properly have asked the court to charge that the defendant was not guilty of negligence in not adopting the new arrester immediately after its discovery; that it had a reasonable time after such appliance came into practical use within which to adopt it.   What was a reasonable time was a question of fact for the jury to determine.

I think that defendant was entitled to the instruction, that no recovery can be had for damages prior to 1879 by reason of defendant's not having adopted the new spark-arrester.   The trial judge seems not to have understood the request, and his answer was prac-

tically a refusal to instruct the jury as requested. But on examination of his charge it will be seen that he had already, in effect, thus charged. There was no dispute whatever in the evidence that the new arrester was first used in 1879 or 1880. The judge instructed the jury as follows: " It is for you to determine whether the evidence in this case justifies you in saying that they were negligent in refusing to adopt the new appliance that has been spoken of. * * * Whether, in others words, if they had adopted, in 1879, 1880, 1881, 1882 and 1883, before this fire occurred, * * * the new appliance that has been referred to, that then this building would have been destroyed or its rental value depreciated. You will have to find all these things. You will have to find that they * * * negligently refused to adopt the modern appliances which were in practical operation and had received the test of experience."

It will thus be seen that the court below, in effect, instructed the jury that the negligence, if any, of defendant in failing to use the new appliance was in the years 1879, 1880, 1881, 1882 and 1883. Having so charged the jury he was not called upon to repeat the instruction.

I also think that the court correctly declined to charge that there was no evidence in the case upon which the jury could find, that the defendant was negligent in the use of the appliances it had prior to 1879. Without considering the evidence of Kirk there was some evidence of negligence on the part of defendant prior to 1879. It is decided in *Field* v. *New York Central Railroad* (32 N. Y., 346), that " the fact that the sparks or coals were scattered at all upon their roadway in such quantities as to endanger property on abutting premises, raised an inference of some weight that the engines were improperly constructed or managed." (See, also, *Bedell* v. *Long Island R. R. Co.*, 44 N. Y., 369; *O'Neill* v. *N. Y., O. and W. R. R.*, 115 id., 583, 584; Shearman and Redfield on Negligence [2d ed.], § 33; *Sugarman* v. *The Man. El. R. Co.*, 42 N. Y. St. Rep., 30; *Ruppel* v. *Man. R. Co.*, 13 Daly, 11.)

In this case there was abundant evidence showing that showers of sparks were frequently emitted from defendant's freight engines on plaintiff's house, setting fire to it on several occasions. This, within the cases above cited, was evidence of negligence on the part

of the defendant, justifying the refusal of the court to charge as requested.

I do not think the judge erred in declining to instruct the jury to disregard the evidence of plaintiff that the market-value of his house was $700 or $800, on the ground that the witness, on cross-examination, stated that he understood by the market-value of the house what it would cost to replace it. The witness had contradicted himself. He first swore that he meant by the market-value what it would cost to replace it. He was afterwards asked and answered as follows:

" Q. Do you understand that the cost of rebuilding or replacing a building is the proper test of market-value? A. No, sir; I don't.

" Q. Do you understand that the market-value of a building means what it will bring in the market? A. Yes, sir.

" Q. But in making your answer of $1,200 as the market-value of your building, you say you meant what it would cost to replace it? A. Yes, sir."

The witness was not asked whether, in placing the market-value at $700 or $800, he meant what it would cost to replace the house. The meaning of the witness is somewhat doubtful. Under the circumstances, I think the testimony was properly submitted to the jury by the trial judge as weak and inconclusive evidence.

Other exceptions were taken on the part of the defendant which I do not deem it necessaay to discuss.

I conclude that the judgment should be affirmed, with costs.

MAYHAM, P. J., concurred; HERRIOK, J., not acting.

Judgment affirmed, with costs.