CHARLES R. FRACE, Respondent, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Appellant.

*Fire caused by sparks from a locomotive—proximate cause — spark arrester — expert testimony.*

In an action against a railroad company to recover the damages resulting from a fire caused by sparks emitted from a particular locomotive, the plaintiff has made out a *prima facie* case of negligence by showing that large and dangerous sparks have been emitted from the same locomotive frequently and shortly before the fire in question, and the charge of negligence is not overcome by the defendant's showing that the locomotive was equipped with an improved spark arrester, the meshes of which were smaller than the cinders shown to have been emitted.

When a cinder from a locomotive falls upon and sets fire to a building, and the flames extend from that building to another thirty-nine feet distant and set fire to it, the burning of the first building may be considered the proximate and natural cause of the burning of the second building.

A witness testified that he had worked upon locomotives twelve years, six as fireman and six as engineer.

*Held*, that he was competent to give an opinion, as an expert witness for the plaintiff, that if the locomotive in question had been equipped with a properly-constructed spark arrester, properly placed, it could not have emitted sparks of the size it did emit.

Evidence on behalf of a defendant railroad company, consisting of the opinions of its own employees as expert witnesses, that a locomotive was properly con-structed, is not to be deemed conclusive.

APPEAL by the defendant, the New York, Lake Erie and Western Railroad Company, from a judgment of the Supreme Court, entered in the office of the clerk of Allegany county on the 22d day of April, 1892, upon a verdict in favor of the plaintiff, rendered at the Allegany Circuit, and from an order denying the defendant's motion for a new trial made upon the minutes, entered in said clerk's office on the same day.

*James H. Stevens*, for the appellant.

*Clarence S. Farnham*, for the respondent.

LEWIS, J. :

This action was to recover damages for the alleged negligence of the defendant in burning plaintiff's barn and hotel and their contents, situated at Scio Station, Allegany county. The barn was distant from the defendant's railroad track at one end seventy-seven feet, and sixty-seven at the other. The hotel was sixty feet distant from the track and thirty-nine feet from the barn. On the afternoon of the 21st day of April, 1889, a spark from the smokestack of defendant's engine, No. 579, fell upon the roof of the plaintiff's barn, set it on fire, and the barn and its contents were destroyed. The flames from the burning barn extended over to and upon the hotel, and it was burned with its contents. There is an up grade to the defendant's track, of eight feet to the mile as it extends easterly through Scio. The engine was at the time going in an easterly direction, drawing a freight train, and, as it passed the hotel and barn, it discharged a large quantity of sparks. A very strong wind was blowing at the time from the railroad track towards the barn. There was evidence tending to show that on several occasions prior to the day of this fire, this same engine threw out of its smokestack, as it passed through the village, large quantities of live coals, and set fires along the sides of the railroad track, and that about three weeks before the day of the burning of the barn and hotel, as the engine passed easterly by plaintiff's hotel, large live cinders were thrown out of the smokestack. Some of them fell upon the roof of plaintiff's hotel and set it on fire.

The cinders thrown out from time to time were shown to have been from one-half to three-quarters of an inch in diameter, as large as the end of a man's thumb or a hickory nut. The evidence tended to show that when an engine is drawing a train up grade, its labor is very materially increased, and that it emits cinders and sparks in larger quantities, and throws them a greater distance than when it is running on a level or down grade. An engineer can so manage his engine as to materially lessen the flow and velocity of the sparks from the smokestack by lessening the amount of steam used, and allowing the train to be partially propelled by its own

momentum.   It is the contention of the plaintiff that it was the duty of the engineer on this occasion, knowing that the wind was blowing with great velocity across the railroad track towards the plaintiff's buildings, to shut off or lessen the quantity of steam while passing, and that his failure so to do was evidence of negligence.

The plaintiff further contends that the fact that the engine scattered such a quantity of large sparks was evidence that it was improperly constructed, or was out of condition, or that it was negligently and improperly managed.

Plaintiff's evidence made, we think, a *prima facie* case of negligence against the defendant. (*Case* v. *Northern Central R. R. Co.*, 59 Barb. 644; *Field* v. *N. Y. C. R. R. Co.*, 32 N. Y. 339; *Collins* v. *N. Y. C. & H. R. R. R. Co.*, 33 N. Y. St. Repr. 569.)

The defendant called a number of witnesses whose evidence tended to show that the engine was equipped with a well-known and improved appliance for regulating the flow and preventing the discharge of sparks of improper dimensions.

The meshes of the netting of the spark arrester were square and scant three-sixteenths of an inch in size.   A number of defendant's employees whose duty it was to inspect the spark arrester of its engines, testified that this engine was examined just before and immediately after the fire and its netting was found to be in perfect condition.   It was obviously impossible for cinders of the dimensions the plaintiff proved were thrown out of the smokestack of this engine from time to time, to pass through the meshes of its spark arrester.   Being confronted by evidence that the size of the sparks thrown out were much larger then the meshes of the spark arrester, the defendant attempted to explain it, and called as a witness its mechanical engineer, A. E. Mitchell, who testified that he had made experiments with an engine with a view of ascertaining how it was possible for sparks of dimensions larger than the meshes of the spark arrester to be thrown out of the smokestack of an engine.

His conclusion from his experiments was, that the sparks pass through the netting in a molten state, and that before they pass out of the smokestack in some way they come in contact with each other and adhere together, and thus form large cinders.   The theory was an ingenious one, but, in view of the terrific commotion

to which the sparks are subjected while in the stack, the conditions would not seem, to the ordinary lay mind, to be favorable to such a union of the sparks. Notwithstanding the defendant's very vigorous and able defense, it was, we think, still a question for the jury whether the fire was caused by the negligence of the defendant. The barn and hotel were constructed of wood. The barn was a large one, and at the time of the fire full of combustible material.

The distance between the two buildings was only thirty-nine feet. The barn burned first, and the testimony tended to show that the flames from the burning barn extended over into the hotel and set it on fire. The jury was justified in finding that the burning of the barn was the proximate and natural cause of the burning of the hotel. Proximate cause is defined (Vol. 16, p. 436, of the American and English Encyclopædia of Law) as "that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produced the result complained of, and without which that result would not have occurred."

Elmer A. Chase, a witness called by the plaintiff, was allowed, against the objection of the defendant, to give his opinion that if this engine had been equipped with a properly-constructed spark arrester, properly placed in the engine, it could not have emitted sparks of the size this engine did. He had testified that he had worked upon a locomotive engine for twelve years, six years as a fireman and six years as an engineer; that he was familiar with all of the parts of a locomotive engine, including the spark arrester. His experience must have made him very familiar with all the parts and the operation of engines.

The jury presumably were not acquainted with the mechanism and operation of locomotive engines. It was, we think, proper to allow Chase to give his opinion as an expert. The question of the suitableness of the spark arrester under the evidence was properly left to the determination of the jury. The evidence showing that the engine was properly constructed, consisted of the opinions of expert witnesses. They were the employees of the defendant. Such evidence cannot be held to be conclusive. (*Cornish* v. *Farm Buildings Fire Ins. Co.*, 74 N. Y. 295.)

We have examined all of the exceptions of the defendant, and find nothing in them justifying a reversal of the judgment. The

case was properly submitted to the jury, and their verdict must be held to be conclusive.

· The judgment and order appealed from should be affirmed.

All concurred.

Judgment and order appealed from affirmed.